FLETCHER *v.* BOARD OF EDUCATION OF SCHOOL DISTRICT
FRACTIONAL NO. 5.

1. CONTRACTS—ORAL CONTRACTS.
   Courts are governed by what the parties to an oral contract of
   employment said and did, and not merely by their unexpressed
   subjective intent.

2. SAME—MEETING OF MINDS.
   What is meant by "meeting of minds" is the agreement reached
   by the parties and expressed.

3. SAME—DETERMINATION OF INTENT.
   The intention of parties to a contract must be gathered not
   from what a party now says he then thought but from the
   contract itself.

4. SAME—EMPLOYMENT AS ATTORNEY—INTENT—EVIDENCE.
   Use of word "attorney" in minutes of defendant school board is
   evidence of an intent, when it entered into contract with
   plaintiff, an attorney, that it was hiring an attorney.

5. ATTORNEY AND CLIENT—NATURE OF EMPLOYMENT.
   An attorney at law need not be in court or preparing to go into
   court, to be engaged in work as an attorney, as in a legal sense,
   he often acts as an agent, representative or substitute.

6. SAME—AGENCY NATURE OF RELATION.
   The employment of counsel does not differ in incidents, or in the
   rules which govern it, from the employment of an agent in
   any other capacity or business.

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 12 Am. Jur., Contracts, § 19.
[3] 12 Am. Jur., Contracts, § 227.
[5] 5 Am. Jur., Attorneys at Law, § 3.
[7–10] 5 Am. Jur., Attorneys at Law, § 198.
[7–10] What constitutes reasonable attorney's fee in absence of
   provision in contract or statute fixing amount. 9 A.L.R. 237;
   143 A.L.R. 672.

7. SAME—CONTRACT OF EMPLOYMENT—COMPENSATION.

Under record presented in attorney's action against school district for payment for services rendered in procuring a gift to defendant, evidence was convincing that an express contract between the parties was entered into by which the relationship of attorney and client was created, that defendant received the services rendered by him and benefited thereby, hence was bound to pay a reasonable fee as compensation therefor.

8. SAME—VALUE OF SERVICES RENDERED.

In determining the reasonableness of an attorney's charges, the court takes into consideration the skill and experience called for from the attorney, the character of the services rendered, the importance of the case, the time spent and expenses incurred and the results accomplished.

9. SAME—REASONABLENESS OF CHARGES.

The reasonableness of the charges for services by one attorney cannot be measured by what some other attorney would charge as there is no universal yardstick for measuring the reasonableness of charges for services of all atorneys.

10. SAME—FEES—SECURING GIFT TO SCHOOL DISTRICT.

Where it appears that during a period of about six months plaintiff attorney spent over 80 hours in conferences alone, secured $12,500 for defendant school district which it would not otherwise have obtained, total amount of gift obtained was $25,000, and there was competent testimony that a fair fee for his services would be between $3,500 and $5,000, a fee of $1,500, the amount sought by plaintiff, was a reasonable fee for services rendered.

Appeal from Livingston; Jayne (Ira W.), J., presiding. Submitted October 5, 1948. (Docket No. 22, Calendar No. 44,111.) Decided December 17, 1948.

Assumpsit by E. Reed Fletcher against Board of Education of School District Fractional No. 5, Brighton and Genoa Townships, Livingston County for attorney's fee. Judgment for defendant. Plaintiff appeals. Reversed and remanded for entry of judgment.

*Edward A. Elsarelli,* for plaintiff.

BOYLES, J.    Plaintiff, an attorney in Brighton, Livingston county, brought this suit to recover $1,500 for services rendered the defendant school district in obtaining a gift of $25,000 toward developing an athletic field.    The case was heard by the court without a jury and judgment of no cause for action entered.    Plaintiff appeals.    The two essential questions for consideration are whether the plaintiff proved a contract of employment; and, if so, what is a reasonable compensation for the services rendered.

Plaintiff was also the mayor of the city of Brighton.    However, the defendant school board is a separate political entity from the city of Brighton and plaintiff was in no way connected with defendant school board in any official capacity.    The suit arises for services rendered by plaintiff in procuring a gift of $25,000 for the defendant school district from the Detroit Community Fund.    One Max Buek, a resident of the city of Brighton, had died leaving a will in which he bequeathed $25,000 to the State conservation department or, if it declined to accept, then to the township of Hartland for the purpose of erecting a memorial to the testator's mother.    Both legatees declined to accept the legacy and it was declared lapsed; it then went to the residuary legatee, the Detroit Community Fund.    Subsequently the executor of the Buek estate expressed regret to the counsel for the residuary legatee, Detroit Community Fund, that no memorial for Mr. Buek's mother was to be established.    Thereupon counsel for the residuary legatee and the executor of the estate arrived at a tentative agreement whereby the residuary legatee agreed to set aside $12,500 to be used somewhere in the city of Brighton as a memorial.

Pursuant to this tentative agreement, the executor talked with the plaintiff in his capacity as mayor of Brighton about using the money for a memorial park. This was in March of 1945. The mayor, after discussing the matter with members of the city council, told the executor that the city was not anxious for the gift. On May 17, 1945, plaintiff in his capacity as mayor wrote a letter to the executor of the Buek estate urging in effect that the money be turned over to the board of education as they could make better use of the moneys, and that the school board was agreeable to the suggestion. This was also the opinion of the city council, two members of which, Mr. Stonex and Mr. Ballard, were also members of the school board. On May 21, 1945, plaintiff called Mr. Stonex on the telephone and told him:

"I thought it was possible for the school district to obtain $12,500 from the Detroit Community Fund, and the thing for them to do was hire themselves a lawyer and go after it."

Plaintiff had already represented the school district as its attorney, in another matter. That same night a meeting of the school board took place and the minutes disclose that the following action was taken:

"Meeting was called to appoint an attorney to represent us in the Sloan Memorial Fund proposal.

"Moved by Stonex and supported by Ballard that we appoint Reed Fletcher to represent us in negotiations necessary to obtain money from Max W. Buek estate for developing the athletic field as a memorial. Motion carried unanimously."

Plaintiff, being informed of the action of the school board, then entered into a series of negotiations with the residuary legatee, the school board, the executor of the estate, and construction person-

nel.   He made numerous trips to Detroit and Howell for various conferences with the representatives of the Detroit Community Fund and the former attorney for the estate.   He expended some 86 hours on which a time book was kept, as well as other time, on the defendant school board's behalf.   From time to time he reported to defendant as to progress in negotiations, either to the board as a whole or to the buildings and grounds committee.   After some four months of negotiations the Detroit Community Fund made a gift, not of $12,500, but of $17,500, to the defendant for development of the athletic field. Plaintiff continued his negotiations with the Detroit Community Fund, urging upon them that they should give defendant not $17,500, but $25,000, and as a result of these negotiations, on or about November 7, 1945, the Detroit Community Fund did in fact make the additional gift of $7,500 to the defendant, making a total gift of $25,000.   All negotiations were handled through plaintiff.

The record shows that this was a voluntary gift on the part of the Detroit Community Fund, without authority or compulsion in the will of Mr. Buek. The school district had no legal claim to the money. Plaintiff could only negotiate for a gift, not for the enforcement of any legal right of the defendant.

It is defendant's contention that despite the wording of the minutes heretofore noted, it was the intent of the school board to merely hire plaintiff as their agent or representative in securing the gift.   Thus Mr. Stonex, a member of the school board, testified that he had in mind hiring plaintiff as a representative.   Harold Ballard, a member of the school board, testified to the same effect, as did Mrs. Clara Daniells.   Stonex further testified that the school board did intend to compensate plaintiff for any expenses incurred such as traveling and telephone calls.   It is apparent that the defendant did hire plaintiff un-

der an express oral contract of employment, the issue going only as to the capacity in which plaintiff was acting. Courts are governed by what the parties said and did, and not merely by their unexpressed subjective intent.

"What is meant by 'meeting of minds' is the agreement reached by the parties and expressed." *Hudson* v. *Columbian Transfer Co.*, 137 Mich. 255 (109 Am. St. Rep. 679).

"The intention must be gathered not from what a party now says he then thought but from the contract itself." *County of Cass* v. *Lee*, 271 Mich. 491.

The use of the word "attorney" in the minutes of defendant school board is an indication of its intent when it entered into the contract of employment. The school board authorized the employment and hired an attorney. An attorney at law need not be in court or preparing to go into court, to be engaged in work as an attorney. In a legal sense, an attorney at law often acts as an agent or representative.

"The word 'attorney' signifies, in its broadest sense, a substitute or agent." 7 C. J. S. p. 702.

" 'Attorney' is an ancient English word, and signifieth one that is set in the turn, stead, or place of another." *Ricker's Petition*, 66 N. H. 207 (29 Atl. 559, 24 L. R. A. 740).

"Attorney, *n.* A deputy or agent." Webster's New International Dictionary (2d Ed.), p. 179.

"The relation of attorney and client is one of agency." *Rothman* v. *Wilson* (C. C. A.), 121 Fed. (2d) 1000, 1006.

"The employment of counsel does not differ in its incidents, or in the rules which govern it, from the employment of an agent in any other capacity or business." *City of Detroit* v. *Whittemore,* 27 Mich. 281.

The record is convincing that there was an express contract between plaintiff and defendant

which created the relationship of attorney and client. Defendant received services rendered by plaintiff and benefited thereby, and is bound to pay a reasonable fee as compensation therefor.

There remains only the question of what is a reasonable compensation for plaintiff's services. Defendant offered plaintiff a check for $150 which was refused. In *Crary* v. *Goldsmith,* 322 Mich. 418, 428, the Court said:

"We take into consideration the skill and experience called for from the attorney, the character of the services rendered, the importance of the case, the time spent and expenses incurred, and the results accomplished. The reasonableness of the charges for services by one attorney cannot be measured by what some other attorney would charge. There is no universal yardstick which can be used to measure the reasonableness of charges for services of all attorneys, comparing one with another."

"The conclusion of the court below that an allowance of $2,000 to an attorney for his services in securing a favorable adjustment of an indebtedness of about $25,000 owing to his client was reasonable, is not disturbed, on appeal, where the attorney had kept no memorandum of the time spent, and the testimony as to the value of said services was from $1,000 to $4,000." *Fry* v. *Montague* (syllabus), 242 Mich. 391.

Plaintiff's bill of particulars and the evidence in the record indicate that plaintiff spent many hours in conferences, telephone calls, and trips, from May 22, 1945, until November 7, 1945. Over 80 hours were spent in conferences alone. Plaintiff secured at least $12,500 for the school district which defendant would not otherwise have obtained. The total amount of the gift subsequent to plaintiff's employment amounted to $25,000.

In *Fry* v. *Montague, supra,* an allowance of $2,000 in attorney's fees was held not excessive when the amount in litigation exceeded $25,000. In *McGraw* v. *Township of Lake,* 266 Mich. 38, an allowance of $10,000 was held not excessive when the amount involved was over $140,000 and the services extended over a 15-month period. In *Schafer* v. *Knuth,* 309 Mich. 133, a fee of $2,150 was allowed, plus expenses, though the client settled the proceeding without the attorney's consent. The whole subject of attorney's fees is exhaustively covered in 143 A. L. R. annotation 672. In the case at bar there was competent testimony that a fair fee for plaintiff's services would be between $3,500 and $5,000. Taking into account the various factors and the manner in which this gift was obtained, we consider $1,500 to be a reasonable fee for plaintiff's services rendered.

Appellee has not filed a brief in this Court. Under the foregoing conclusions, other questions raised by appellant need not be discussed. The case is remanded for entry of judgment for plaintiff for $1,500, with costs.

BUSHNELL, C. J., and SHARPE, REID, NORTH, DETHMERS, BUTZEL, and CARR, JJ., concurred.