# Order

**Michigan Supreme Court**
**Lansing, Michigan**

May 22, 2020

Bridget M. McCormack,
Chief Justice

David F. Viviano,
Chief Justice Pro Tem

Stephen J. Markman
Brian K. Zahra
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh,
Justices

158789

DAVID R. SANDERS and HEATHER H.
SANDERS,
          Plaintiffs-Appellees,

v

                                    SC: 158789
                                    COA: 338937
TUMBLEWEED SALOON, INC., and        Montmorency CC: 16-003949-NO
PAINTER INVESTMENTS, INC., d/b/a
CHAUNCEY'S PUB,
          Defendants-Appellants,

and

SHAWN SPOHN and ZACHARY PIERCE,
          Defendants.

_____/

On November 6, 2019, the Court heard oral argument on the application for leave to appeal the October 30, 2018 judgment of the Court of Appeals. On order of the Court, the application is again considered, and it is DENIED, because we are not persuaded that the question presented should be reviewed by this Court.

CAVANAGH, J. (*concurring*).

I concur in the denial order because I agree that the Court of Appeals majority did not commit error requiring reversal by reversing the trial court's order granting defendants summary disposition.

I write separately to address an aspect of the dramshop act, MCL 436.1801 *et seq*., that was not specifically raised on appeal, but that I find relevant to whether plaintiffs complied with the plain language of the notice provision of that act. At the time of the appeal, MCL 436.1801(4) stated:[1]

> An action under this section shall be instituted within 2 years after the injury or death. A plaintiff seeking damages under this section shall give written notice to all defendants within 120 days *after entering an*

---

[1] The notice provision of the dramshop act was amended in 2019 and is now codified at MCL 436.1801(3). See 2019 PA 131, effective November 21, 2019. The changes to the text of the provision were minor and do not affect my analysis.

*attorney-client relationship for the purpose of pursuing a claim under this section.* Failure to give written notice within the time specified shall be grounds for dismissal of a claim as to any defendants that did not receive that notice unless sufficient information for determining that a retail licensee might be liable under this section was not known and could not reasonably have been known within the 120 days. [Emphasis added.]

I believe plaintiffs satisfied this notice requirement as a matter of law. The plain language of the statute simply provides that notice must be given within 120 days of the formation of "an" attorney-client relationship for the purpose of pursuing a claim under the dramshop statute. In this case, there is no dispute that the complaint was filed within the two-year statute of limitations and that plaintiffs provided the requisite notice of the claim to defendants within 120 days of the formation of "an" attorney-client relationship with attorney Matthew Hanley.[2]

The statutory requirement for notice within 120 days of the formation of "an" attorney-client relationship does not specify that it must be the *first* attorney-client relationship. The use of the indefinite article "an" indicates that the statute does not refer to a particular attorney-client relationship, but rather any attorney-client relationship. See *Massey v Mandell*, 462 Mich 375, 382 n 5 (2000) (" 'The' and 'a' have different meanings. 'The' is defined as 'definite article. 1. (used, esp. before a noun, with a specifying or particularizing effect, as opposed to the indefinite or generalizing force of the indefinite article a or an). . . .' *Random House Webster's College Dictionary*, p 1382."). Admittedly, this notice requirement functions differently than most. But that is because it is not tied to an easily identifiable, date-specific event, such as the date of the event giving rise to the claim. Rather, the notice requirement is tied to an event that can occur—indeed, is likely to occur—more than once: the formation of an attorney-client relationship for the purpose of pursuing a claim under the dramshop statute. Because plaintiffs notified defendants of the claim within 120 days of the formation of an attorney-client relationship, following which plaintiffs subsequently filed the instant claim, I believe the requirements of MCL 436.1801(4) were met.

The dissent points out that MCL 436.1801(4) (now MCL 438.1801(3); see 2019 PA 131) contemplates a plaintiff providing "notice" and not "notice[s]" to all defendants

---

[2] Regardless of whether the dissent or the Court of Appeals is correct with respect to whether plaintiffs formed an attorney-client relationship with attorney Samuel Meklir for purposes of pursuing a dramshop action, defendants do not dispute that the notice provided by Hanley was sufficient under the statute and was provided within 120 days after the formation of an attorney-client relationship between Hanley and plaintiffs, and that Hanley filed the instant dramshop action on plaintiffs' behalf within the two-year statute of limitations.

and that this use of the singular form of the word indicates, despite the lack of specific language, that the requisite notice must follow the formation of the *first* attorney-client relationship. This argument ignores the fact that, under MCL 8.3b, the singular can be read to include the plural ("Every word importing the singular number only may extend to and embrace the plural number, and every word importing the plural number may be applied and limited to the singular number."). See also MCR 1.107 ("Words used in the singular also apply to the plural, where appropriate.") In addition, MCL 438.1801(4) requires that notice be given to "all" defendants, further indicating that the statute contemplates the possibility of more than a single notice.

The dissent further argues that the *context* in which "an attorney-client relationship" is used supports the interpretation of a singular notice and the formation of a singular attorney-client relationship. Specifically, the dissent argues that, construed together, the statute's requirement that notice be given within 120 days of forming an attorney-client relationship and its provision that failure to provide that notice within that time period "shall be grounds for dismissal of a claim as to any defendants that did not receive that notice" necessarily means that "the statute requires plaintiffs to give one written notice within 120 days after entering into the *first* attorney-client relationship for purposes of pursuing a dramshop action—irrespective of the number of relationships plaintiffs ultimately enter into thereafter." I fail to see how these provisions, read together, support the dissent's conclusion. Neither the fact that a plaintiff must give notice within 120 days of forming "an" attorney-client relationship nor the fact that his or her claim is subject to dismissal for failing to give "that" notice illuminates the question of whether a singular notice or a singular attorney-client relationship is contemplated by the statute. Rather, as pointed out above, the statute uses the term "an" rather than "the" or "the first" when describing "attorney-client relationship" and, so long as the notice was given within 120 days of forming an attorney-client relationship and the claim was filed after that relationship was formed, the statute, strictly speaking, was complied with.

I disagree with the dissent's conclusion that the ability to reset the notice requirement by obtaining a new attorney eliminates the 120-day notice requirement altogether and renders the failure to comply "meaningless." The 120-day requirement still exists for each attorney-client relationship formed in pursuit of a dramshop claim. If a plaintiff does not comply with the notice requirement after entering an attorney-client relationship, then any dramshop claim that is pursued as a result of that attorney-client relationship is subject to dismissal as indicated in the statute. This is a result of the language tying the notice to the formation of "an" attorney-client relationship and, regardless of whether this is a wise policy choice, the language chosen by the Legislature allows it.

ZAHRA, J. (*dissenting*).

I respectfully dissent from the majority's order denying leave in this case. Instead, I would reverse the Court of Appeals judgment and reinstate the trial court's order granting summary disposition in favor of defendants.

The dispositive question presented in this case is whether plaintiffs entered into an attorney-client relationship with attorney Sam Meklir. The trial court dismissed plaintiffs' claims, finding that Meklir and plaintiffs had an attorney-client relationship and that plaintiffs' notice under the dramshop act, MCL 436.1801 *et seq*., was insufficient. A split panel of the Court of Appeals reversed. The majority concluded that there was "a genuine question of fact regarding the very existence of a relationship, if any, between plaintiffs and Meklir."[3] The dissenting judge, on the other hand, concluded that no material facts were in dispute and that "reasonable minds could not differ regarding the existence or the scope of the parties' attorney-client relationship."[4] I agree with the dissenting judge from the Court of Appeals.

## I. THE UNCONTROVERTED AND MATERIAL FACTS

Plaintiffs, David and Heather Sanders, traveled from their home in northern Michigan to consult with attorney Sam Meklir about the injuries sustained by David after being attacked by two intoxicated men who had consumed alcohol at Chauncey's Pub and Tumbleweed Saloon, Inc. (defendants). Plaintiffs shared with Meklir pertinent information about the events that occurred December 2, 2014, the night David was assaulted. Plaintiffs looked to Meklir to "get things going" regarding their potential claims. After consulting with Meklir, plaintiffs believed that they had a cause of action. However, because their lawsuit needed to be filed in northern Michigan, Meklir, whose office is in Southfield, Michigan, informed plaintiffs he would not be the attorney who would litigate their claims. Meklir thereafter referred plaintiffs to their current attorney, Matthew Hanley, who practices in Traverse City, Michigan. Also, after consulting with plaintiffs, Meklir sent the following letter to defendant Tumbleweed on February 3, 2015:

> Please be advised that I represent Mr. David Sanders as a result of injuries he sustained while at the Highway Bar[5] which occurred on December 2, 2014.

---

[3] *Sanders v Tumbleweed Saloon, Inc*, unpublished per curiam opinion of the Court of Appeals, issued October 30, 2018 (Docket No. 338937), p 7.

[4] *Id*. at 1 (GLEICHER, J., dissenting).

[5] Tumbleweed is also known as the "Highway Bar" and the "Hi-Way." Further, David was actually injured at Chauncey's Pub, not Tumbleweed.

I understand that you have a videotaping system that would have recorded the activities, which occurred and during which, Mr. Sanders was injured.

We believe that the video evidence, which is in your possession, would be critically important.

We would ask that the tapes, discs, or digital storing device the events are kept on, be preserved and not subject to spoliation.

Our firm would be willing to view the information at your convenience.

I thank you in advance for your cooperation.

On November 30, 2015, Hanley also sent a letter to Tumbleweed. Hanley's correspondence purported to provide notice required under the dramshop act. Thereafter, Hanley filed a dramshop action on behalf of plaintiffs in Montmorency County.

## II. ANALYSIS

The notice provision of Michigan's dramshop act requires plaintiffs to "give written notice to all defendants within 120 days after entering an attorney-client relationship for the purpose of pursuing a claim under this section."[6] Failure to give such notice within the 120 days specified is grounds for dismissal.[7] The parties agree that if plaintiffs entered into an attorney-client relationship with Meklir for purposes of pursuing a dramshop claim, plaintiffs' claims must be dismissed for failure to comply with the notice provisions of the dramshop act.

"The relation of attorney and client is one of agency."[8] "Whether in any case an attorney is professionally employed depends on the relations and mutual understanding of the parties, on what was said and done, and all the facts and circumstances of the particular undertaking."[9] The Court of Appeals majority needlessly looked outside

---

[6] MCL 436.1801(4). The Legislature recently amended MCL 436.1801, moving the notice provision at issue to MCL 436.1801(3). See 2019 PA 131. This statement quotes the preamendment version of the statute.

[7] *Id*.

[8] *Fletcher v Bd of Ed of Sch Dist Fractional No 5*, 323 Mich 343, 348 (1948) (quotation marks and citation omitted).

[9] *Case v Ranney*, 174 Mich 673, 682 (1913).

Michigan for authority regarding the creation of an attorney-client relationship. This Court has clearly stated that the attorney-client relationship "is sufficiently established when it is shown that the advice and assistance of the attorney are sought and received in matters pertinent to his profession."[10] "The rendering of legal advice and legal services by the attorney and the client's reliance on that advice or those services is the benchmark of an attorney-client relationship."[11]

Plaintiffs and Meklir entered into an attorney-client relationship for the purpose of pursuing a dramshop claim when they met in Meklir's Southfield office, sometime before February 3, 2015, the date of Meklir's correspondence to Tumbleweed. Plaintiffs consulted with Meklir in his capacity as a personal injury attorney to obtain legal advice and services. They confided in Meklir as an attorney, discussing the entire incident with him. Plaintiffs relied on Meklir to guide them on the best course of action going forward.

Plaintiffs' contention that no attorney-client relationship existed because they did not *retain* Meklir as their attorney is not pertinent. No retainer agreement or formalized documentation is required to establish an attorney-client relationship.[12] In fact, MCL 436.1801(4) does not require a plaintiff to formally retain an attorney to trigger the 120-day notice requirement.[13] A plain reading of MCL 436.1801(4) demonstrates the Legislature's intent to require notice under a wider range of circumstances, including where, as here, formal retention of an attorney does not occur.[14] Plaintiffs drove from their home in northern Michigan to Meklir's office in Southfield to consult with Meklir in his professional capacity as a personal injury attorney. Plaintiffs sought and received legal advice on how best to pursue their claims. This evidences an attorney-client relationship.[15]

---

[10] *Macomb Co Taxpayers Ass'n v L'Anse Creuse Pub Sch*, 455 Mich 1, 11 (1997) (quotation marks and citation omitted).

[11] *Id*.

[12] *Id*.

[13] MCL 436.1801(4) (requiring a claimant to send notice "within 120 days after *entering* an attorney-client relationship for the purpose of pursuing" a dramshop claim, not 120 days after *retaining* an attorney to pursue that claim) (emphasis added).

[14] See *Johnson v Pastoriza*, 491 Mich 417, 436 (2012) ("We must give effect to the Legislature's intent, and the best indicator of the Legislature's intent is the words used. We must give every word its plain and ordinary meaning . . . . If the language is plain and unambiguous, then judicial construction is neither necessary nor permitted.").

[15] See *Macomb Co Taxpayers*, 455 Mich at 11; see also *Grace v Ctr for Auto Safety*, 72 F3d 1236, 1242 (CA 6, 1996) ("In determining whether an attorney-client relationship exists, . . . the focus is on the *client's* subjective belief that he is consulting a lawyer in

Meklir's letter is a critical piece of evidence, but not because it establishes, by itself, the creation of an attorney-client relationship. Rather, the letter serves as a memorialization of what occurred during plaintiffs' consultation with Meklir in that it signifies that plaintiffs sought and received legal advice and services from Meklir in his capacity as a personal injury attorney.[16] The letter demonstrates that Meklir learned the following information during his consultation with plaintiffs: (1) David sustained injuries, (2) where and when David sustained those injuries (purportedly at the Highway Bar on December 2, 2014), and (3) there was a videorecording system that might have recorded the incident. Meklir's focus on the bar also establishes that plaintiffs' likely cause of action was an action under the dramshop act. An attorney-client relationship may be implied from the conduct of the parties,[17] and here, plaintiffs' conduct—as evidenced by Meklir's letter—demonstrates that plaintiffs entered into an attorney-client relationship with Meklir for the purpose of pursuing a dramshop claim.

Accepting as true plaintiffs' claim that Meklir acted unilaterally in sending this letter, their cause of action fares no better. While an attorney-client relationship may not be established unilaterally,[18] plaintiffs' attorney-client relationship with Meklir was established *before* Meklir sent the letter. The letter simply documents the existence of that relationship.

Similarly, Meklir's affidavit is not material or genuine with regard to the establishment of an attorney-client relationship. Specifically, Meklir avers that after speaking "with them regarding a potential personal injury claim," he "informed the Sanders[es] that [he] would not be taking the case or representing them." But the mere fact that plaintiffs spoke with Meklir in his professional capacity regarding a potential personal injury claim is sufficient to establish an attorney-client relationship, even if that consultation did not result in the execution of a formal retainer agreement. A genuine question of fact is not created by Meklir's attestations that he did not represent the Sanderses and only sent the letter to Tumbleweed as a "favor" to plaintiffs. "Summary disposition cannot be avoided by conclusory assertions [in an affidavit] that are at odds . . . with . . . [the] actual historical conduct of a party."[19] Notwithstanding Meklir's

the lawyer's professional capacity and his intent is to seek professional legal advice.") (quotation marks and citation omitted).

[16] See *Macomb Co Taxpayers*, 455 Mich at 11.

[17] *Id.*; see also *Fletcher*, 323 Mich at 348 ("Courts are governed by what the parties said and did, and not merely by their unexpressed subjective intent.").

[18] *Scott v Green*, 140 Mich App 384, 400 (1985) ("[A] unilateral act is not sufficient to create an attorney-client relationship, the attorney-client relationship being based in contract."), citing *Fletcher*, 323 Mich at 348.

[19] *Aetna Cas & Surety Co v Ralph Wilson Plastics Co*, 202 Mich App 540, 548 (1993).

affidavit clearly contradicting his prior assertion in the letter that he "represent[ed]" David, Meklir's admission that he sent the letter, even as a favor to plaintiffs, nevertheless proves that Meklir acted on behalf of plaintiffs in sending it.[20] That is, Meklir's admission confirms that he was acting pursuant to the attorney-client relationship he formed with plaintiffs, and that relationship did not dissolve simply because Meklir told plaintiffs that he would not take the case.

Plaintiffs also rely on their deposition testimony to argue that they did not consent to an attorney-client relationship with Meklir, and their lack of knowledge that Meklir sent the letter evidences the lack of mutuality required to form that relationship. Plaintiffs' deposition testimony does not create a genuine and material question of fact. As the United States Court of Appeals for the Sixth Circuit recently stated, while citing the decision of the Michigan Court of Appeals below for support: "[I]n every case where the existence of an attorney-client relationship is in dispute, one side will say a relationship existed, while the other side will say it did not."[21] Here, notwithstanding plaintiffs' conclusory assertions that they did not retain Meklir, their testimony actually supports the existence, albeit brief, of an attorney-client relationship, as they testified they met with Meklir in his capacity as an attorney to obtain legal advice and services about the injuries sustained by David.

## III. RESPONSE TO CONCURRENCE

The concurrence concludes that plaintiffs complied with the 120-day notice requirement under MCL 436.1801(4) because the statute only requires notice to be given after *an* attorney-client relationship is entered and "does not specify that it must be the *first* attorney-client relationship." First, the plain language of MCL 436.1801(4) belies this interpretation. MCL 436.1801(4) contemplates a plaintiff providing "notice to all defendants." The statute does not contemplate a plaintiff providing "notice[s] to all defendants." In fact, MCL 436.1801(4) expressly states that "[f]ailure to give written notice within the time specified shall be grounds for dismissal of a claim as to any

---

[20] See *Wigfall v Detroit*, 504 Mich 330, 340 (2019) ("[I]n determining whether an agency has been created, we consider the relations of the parties as they in fact exist under their agreements or acts and note that in its broadest sense agency includes every relation in which one person acts for or represents another by his authority.") (quotation marks and citations omitted); see also *Fletcher*, 323 Mich at 348 ("An attorney at law need not be in court or preparing to go into court, to be engaged in work as an attorney. In a legal sense, an attorney at law often acts as an agent or representative.").

[21] *Cohen v Jaffe Raitt Heuer and Weiss, PC*, 768 F Appx 440, 444 (CA 6, 2019), citing *Sanders*, unpub op at 4-6 (opinion of the Court).

defendants that did not receive *that* notice . . . ."[22]   Clearly, MCL 436.1801(4) contemplates that a plaintiff must send one notice to all defendants.[23]

Further, the concurrence's interpretation of MCL 436.1801(4) fails to take into account the *context* in which "an attorney-client relationship" is used.[24]   Again, MCL 436.1801(4) makes clear that plaintiffs "shall give written notice to all defendants within 120 days after entering an attorney-client relationship for the purpose of pursuing" a dramshop action.  The consequences of plaintiffs' "[f]ailure to give written notice within the time specified shall be grounds for dismissal of a claim as to any defendants that did not receive that notice."[25]   When these two clauses are read in context with one another, the statute requires plaintiffs to give one written notice within 120 days after entering into the *first* attorney-client relationship for purposes of pursuing a dramshop action— irrespective of the number of relationships plaintiffs ultimately enter into thereafter.[26]

---

[22] Emphasis added.

[23] The concurrence relies on MCL 8.3b and MCR 1.107 in contending that the singular word "notice" can import the plural form of "notices."  But such construction is only permissible to the extent it does not conflict with the Legislature's intent.  See MCL 8.3 ("In the construction of the statutes of this state, the rules stated in [MCL 8.3a to 8.3w] shall be observed, unless such construction would be inconsistent with the manifest intent of the legislature."); MCR 1.107 ("Words used in the singular also apply to the plural, *where appropriate*.") (emphasis added).  By requiring plaintiffs to send *notice* to all defendants upon entering an attorney-client relationship for the purposes of pursing a dramshop claim, and by requiring the dismissal of plaintiffs' claim as to all defendants that did not receive *that* notice, the Legislature clearly contemplated one notice being sent to all defendants.

Further, the concurrence contends that because MCL 436.1801(4) requires notice to be given to "all" defendants, the statute contemplates the possibility that more than a single notice may be given.  Obviously, copies of that single notice will have to be sent if there are multiple defendants.  But that is not the same as saying the statute contemplates a notice being sent to all defendants after multiple attorney-client relationships are formed.

[24] *Spectrum Health Hosps v Farm Bureau Mut Ins Co of Mich*, 492 Mich 503, 515 (2012) ("Unless statutorily defined, every word or phrase of a statute should be accorded its plain and ordinary meaning, taking into account the context in which the words are used.") (quotation marks and citation omitted); Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* (St. Paul: Thomson/West, 2012), p 56 ("Of course, words are given meaning by their context . . . .").

[25] MCL 436.1801(4).

[26] See *Langrill v Stingers Lounge*, 471 Mich 926, 926 (2004) ("Because plaintiff did not present any evidence to the contrary, there is a presumption that the attorney-client

Under the concurrence's interpretation, plaintiffs could decide for themselves when MCL 436.1801(4) applies and when it does not. That is, each time plaintiffs fail to give the requisite notice under MCL 436.1801(4), they could avoid dismissal simply by getting a new attorney to litigate their claim. This would eviscerate the 120-day notice requirement altogether and render the consequences of failing to comply with the statute meaningless.[27]

Here, once plaintiffs and Meklir entered into an attorney-client relationship, Meklir was required to provide written notice to defendants under MCL 436.1801(4), which, at a minimum, needed to provide defendants with notice of plaintiffs' intent to pursue a dramshop action.[28] Meklir's letter wholly fails in this regard, as it does not apprise Tumbleweed of David's intent to pursue a dramshop action and was only addressed to Tumbleweed—not Chauncey's Pub. Accordingly, plaintiffs failed to comply with MCL 436.1801(4) after entering an attorney-client relationship with Meklir for the purpose of pursuing a dramshop claim, and as a result, their dramshop claim was properly dismissed.

---

relationship she entered into with her *first* attorney, who filed the original complaint in this matter, included the purpose of pursuing a claim under MCL 436.1801.") (emphasis added).

[27] *Sweatt v Dep't of Corrections*, 468 Mich 172, 183 (2003) (opinion by MARKMAN, J.) ("It is our duty to read the statute as a whole and to avoid a construction which renders meaningless provisions that clearly were to have effect.") (quotation marks and citation omitted). The concurrence contends that "[t]he 120 day requirement still exists for each attorney-client relationship formed in pursuit of a dramshop claim," and that "[i]f a plaintiff does not comply with the notice requirement after entering an attorney-client relationship, then any dramshop claim that is pursued as a result of that attorney-client relationship is subject to dismissal . . . ." The concurrence's interpretation is passing strange. This Court's "primary objective when interpreting a statute is to discern the Legislature's intent." *McCahan v Brennan*, 492 Mich 730, 736 (2012). I fail to see how interpreting MCL 436.1801(4) to allow plaintiffs unilateral authority to reset the statute's 120-day notice requirement effectuates any rational legislative purpose.

[28] *Auto-Owners Ins Co v Seils*, 310 Mich App 132, 167 (2015) (noting that, while MCL 436.1801(4) does not specify what the notice must contain, when read in context, "it is patent that the written notice must, at a minimum, provide notice to the defendant of the plaintiff's intent to pursue an action under the dramshop act against the notified defendant") (quotation marks and brackets omitted).

### IV. CONCLUSION

For these reasons, I agree with the circuit court and the Court of Appeals' dissenting opinion that there is no genuine dispute of material fact that Meklir and plaintiffs entered into an attorney-client relationship for the purpose of pursuing a dramshop claim some time prior to February 3, 2015. Accordingly, I would reverse the judgment of the Court of Appeals and remand to the Montmorency Circuit Court for reinstatement of summary disposition in favor of defendants.

MARKMAN, J., joins the statement of ZAHRA, J.



I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

May 22, 2020



Clerk

s0519