*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

BARBARA DUCHENE, individually, as beneficiary of the DORIS J DUCHENE LIVING TRUST, as beneficiary of the DONALD L DUCHENE SR LIVING TRUST, and as heir to the ESTATE OF DONALD R DUCHENE,

   Petitioner-Appellant,

v

S GARY SPICER SR, individually, as Personal Representative of the ESTATE OF DONALD L DUCHENE SR, as Trustee of the DONALD L DUCHENE SR LIVING TRUST, as President of the DORIS J DUCHENE AND DONALD L DUCHENE SR FOUNDATION, as President of the S GARY SPICER FOUNDATION, and as Trustee of the S GARY SPICER SR TRUST, S GARY SPICER SR FOUNDATION, S GARY SPICER SR TRUST, and DORIS J DUCHENE AND DONALD L DUCHENE SR FOUNDATION,

   Respondents-Appellees,

and

LEAH HAFFEY, DAVID C WIND, JANE DOE, Trustee of the DORIS J DUCHENNE LIVING TRUST, JOHN DOE, JACK DOE, JOHN DOE, JACK DOE, JOHN DOE, JACK DOE, and JACK DOE,

   Respondents,

and

UNPUBLISHED
July 21, 2025
9:02 AM

No. 367308
Grand Traverse Probate Court
LC No. 22-036898-CZ

---

-1-

DAVID FINDLING, Receiver for the DORIS J
DUCHENE AND DONALD L DUCHENE SR
FOUNDATION,

        Appellee.

Before:  FEENEY, P.J., and BORRELLO and LETICA, JJ.

PER CURIAM.

Petitioner, Barbara Duchene, makes numerous allegations against Respondent, S. Gary Spicer, arising out of the latter's representation of petitioner and members of her family.  The trial court granted summary disposition in favor of respondents regarding petitioner's various claims and for the reasons set forth in this opinion, we affirm.

## I.  BACKGROUND

Petitioner asserts she is the sole surviving heir to considerable family wealth derived from a potato chip company established by her maternal grandfather in 1930, which was subsequently sold to what is now known as PepsiCo, Inc.  Petitioner is the descendant of Doris and Donald Duchene, who jointly established the Doris Trust designed to manage the family assets which had accumulated over generations.  Upon Doris's death in 2001, the assets were to be allocated into three distinct subtrusts: The Descendants Trust intended for the benefit of Doris's grandchildren, the Marital Trust structured to provide for Donald's support during his lifetime, and the Family Trust designated for equal distribution among Doris's children.[1]  Donald assumed the role of successor trustee for the Doris Trust following Doris's passing.  S. Gary Spicer is an attorney who provided legal assistance to the Duchene family.  Petitioner alleges a dual representation by Spicer, which he has contested.  The Duchene Foundation, a charitable entity funded by Doris and Donald, had Spicer and petitioner serving in fiduciary capacities.

Petitioner asserts that Donald lacked the authority to distribute any proceeds from the aforementioned trusts in a manner deviating from Doris's explicit directives; notably, the Duchene Foundation was intended as a secondary recipient only.  Allegedly, the Family Trust, Marital Trust, and Descendants Trust were neither properly established nor funded, conflicting with Doris's intentions.  Petitioner claims that Spicer exerted undue influence over Donald, manipulating him to amend his will and the Donald Trust in violation of Doris's distribution scheme.  Petitioner alleges that Spicer redirected significant assets towards the Duchene Foundation, from which he could then earn fees.  Petitioner further alleges that, as trustee of the Donald Trust after Donald's demise in 2015, Spicer had a fiduciary obligation to transfer assets into the Barbara Trust and disburse income and principal to petitioner.  Petitioner alleges that despite her trust in Spicer, he

---

[1]Petitioner's only sibling predeceased her and left no direct descendants.

consistently evaded her inquiries regarding her family's wealth and her financial standing. According to respondents, the Barbara Trust remains funded with over $5 million.

Spicer drafted key documents including Doris's will, Donald's will, the Doris Trust, and the Donald Trust. Although he was not a trustee of the Doris Trust or Doris's personal representative, he did serve as a successor trustee of the Donald Trust and acted as Donald's personal representative in an informal probate proceeding. Petitioner claims her awareness of potential claims against Spicer arose inadvertently when her newly retained estate planning attorney sought information from Spicer, who was reticent to comply, leading to revelations of discrepancies between her presumptions and the records presented to petitioner by Spicer.

Petitioner brought numerous claims against Spicer in the trial court which ultimately granted summary disposition in favor of respondents regarding the petitioner's claims, ruling them time-barred and substantively lacking merit. Petitioner now appeals.

## II. STANDARDS OF REVIEW

A grant or denial of summary disposition is reviewed de novo. *McMaster v DTE Energy Co*, 509 Mich 423, 431; 984 NW2d 91 (2022). Summary disposition may be granted under MCR 2.116(C)(7) if the facts establish that a claim is barred by a statute of limitations. *Grosse Pointe Law Firm, PC v Jaguar Land Rover North America, LLC*, 317 Mich App 395, 399; 894 NW2d 700 (2016). The reviewing court must accept as true all well-pleaded factual allegations in the complaint unless they are contradicted by other evidence. *Id*. "A motion under MCR 2.116(C)(8) tests the *legal sufficiency* of a claim based on the factual allegations in the complaint." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159-160; 934 NW2d 665 (2019). "When considering such a motion, a trial court must accept all factual allegations as true, deciding the motion on the pleadings alone." *Id*. at 160. "A motion under MCR 2.116(C)(10), on the other hand, tests the *factual sufficiency* of a claim." *Id*. at 160. The nonmoving party need not be able to immediately prove its case to survive a motion for summary disposition under MCR 2.116(C)(10), but the nonmoving party must provide some evidentiary basis beyond allegations or beliefs for the court to find a genuine question of fact that would warrant a trial. *Skinner v Square D Co*, 445 Mich 153, 160-161 & 161 n 7; 516 NW2d 475 (1994).

This Court also reviews de novo the interpretation and application of statutes and court rules, *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008), and common-law doctrines, *Kandil-Elsayed v F & E Oil, Inc*, 512 Mich 95, 109; 1 NW3d 44 (2023). While a reviewing court must accept as true the factual allegations in a pleading, the court is not obligated to accept any legal conclusions stated in the pleading. *Masrur v Regents of Univ of Mich*, 344 Mich App 102, 110-112; 999 NW2d 55 (2022). The legal significance of a fact is a question of law. *Philips v Mirac, Inc*, 470 Mich 415, 428; 685 NW2d 174 (2004).

## III. UNDUE INFLUENCE[2]

Petitioner contends that the trial court erred in determining that her claim of undue influence was barred by the statute of limitations. Claims for undue influence can be classified as a form of fraud, thus invoking the legal principles associated with fraudulent claims. *Adams v Adams (On Reconsideration)*, 276 Mich App 704, 710 n 1; 742 NW2d 399 (2007). A fraud claim accrues when the wrong is done, not when the fraud is discovered. *Boyle v Gen Motors Corp*, 468 Mich 226, 227, 230-232; 661 NW2d 557 (2003). The limitations period applicable to fraud claims is six years under MCL 600.5813. *Maurer v Fremont Ins Co*, 325 Mich App 685, 695; 926 NW2d 848 (2018). Petitioner contends that Donald's will and the amendments to the Donald Trust executed between 2007 and 2013 should be rendered invalid due to undue influence. Furthermore, petitioner clarifies that her intention is not to contest or annul the Donald Trust itself, but to hold Spicer liable for the alleged conversion of assets from the Marital Trust, which purportedly enabled Donald to exert control over those assets. However, any misconduct alleged by the petitioner must have occurred prior to or at the time of Donald's death in 2015. Consequently, her claim of undue influence was time-barred as of 2021. *Fremont Ins Co*, 325 Mich App at 695. Petitioner filed her claims in June, 2022.

## IV. LEGAL MALPRACTICE

Petitioner contends that Spicer engaged in legal malpractice and asserts that the trial court erred in its determination that her claim was either time-barred or improperly founded. "A professional malpractice claim accrues when the professional stops serving the plaintiff in a professional capacity on the matter giving rise to the claim." *Nortley v Hurst*, 321 Mich App 566, 570; 908 NW2d 919 (2017). "A plaintiff must bring a malpractice action within two years of accrual of the claim, MCL 600.5805(1) and (6), or within six months of when he or she discovered or should have discovered the claim, MCL 600.5838(2), whichever is later," subject to a six-year period of repose. *Nortley*, 321 Mich App at 570-571. An attorney-client relationship may be established in the absence of a formal contract "when it is shown that the advice and assistance of the attorney are sought and received in matters pertinent to his profession." *Macomb Co Taxpayers Ass'n v L'Anse Creuse Pub Sch*, 455 Mich 1, 10-11; 564 NW2d 457 (1997). However, an attorney-client relationship may not be established on the basis of "unexpressed subjective intent." *Fletcher v Bd of Ed of Sch Dist Fractional No. 5, Brighten & Genoa Twps, Livingston Co*, 323 Mich 343, 348; 35 NW2d 177 (1948). "[T]o be a 'client' of an attorney, one must have a professional relationship with the attorney." *Law Offices of Jeffrey Sherbow, PC v Fieger & Fieger, PC*, 507 Mich 272, 293; 968 NW2d 367 (2021). Such a professional relationship "arises from the agreement of the parties, which can be express or implied through their conduct," and it minimally requires the client to have sought legal advice or services from the attorney, although the mere fact that "some direct or indirect consultation between the parties" occurred is insufficient. *Id*. at 298-299. To bring a legal malpractice claim, a plaintiff must allege more than the mere conclusion that he or she was a client of the attorney. *Estate of Maki v Coen*, 318 Mich App 532, 536, 538; 899 NW2d 111 (2017).

---

[2] Due to the multitude of assertions presented by petitioner against Spicer and various other parties, we will evaluate each claim independently.

Petitioner asserts that Spicer served as her legal counsel; however, her petition fails to provide any meaningful clarification regarding the specifics of Spicer's alleged representation. Cf. *Kloian v Schwartz*, 272 Mich App 232, 240; 725 NW2d 671 (2006). The petition sets forth no facts on which the trial court could find that there exists a question of material fact as to whether Spicer was petitioner's attorney. Review of the record reveals that petitioner's claims on this issue are comprised of a series of conclusory allegations that this Court is not obligated to accept. *Philips*, 470 Mich at 428; *Masrur*, 344 Mich App at 110-112.

Furthermore, petitioner submitted an affidavit that calls into question the validity of her claims. In her affidavit, petitioner indicates that her parents informed her that Spicer was overseeing Donald's affairs, and they would instruct her to sign documents without providing any clarity, often responding to her inquiries with condescension. These assertions suggest that Spicer was not functioning in the capacity of petitioner's legal representative. And, although petitioner asserted that Spicer drafted certain documents on her behalf in 1989, 2013, and 2016, this does not substantiate a continued attorney-client relationship beyond 2016. The trial court afforded petitioner numerous opportunities to present documentary evidence establishing such a relationship, yet she was unable to provide any relevant corroboration. At best, petitioner has merely claimed a subjective belief that Spicer acted as her attorney, *Fletcher*, 323 Mich at 348; *Scott*, 140 Mich App at 400, which is insufficient to establish the legal parameters of an attorney-client relationship. On this record, at the latest, any limitations period for malpractice expired in 2018.[3]

## V. BREACH OF FIDUCIARY DUTY

Petitioner asserts that respondent violated his fiduciary duty and contends that the trial court erred in granting summary disposition regarding this claim. However, it is well established that the mere act of managing certain affairs on behalf of another party does not inherently establish a fiduciary relationship. *In re Jennings' Estate*, 335 Mich 241, 243-244; 55 NW2d 812 (1952). An interpersonal relationship is also insufficient to give rise to a fiduciary duty. *Teadt v Lutheran Church Missouri Synod*, 237 Mich App 567, 580-581; 603 NW2d 816 (1999). A plaintiff cannot establish a fiduciary relationship merely by alleging "inexperience and reliance." *Ulrich v Fed Land Bank of St Paul*, 192 Mich App 194, 196; 480 NW2d 910 (1991). A claim for breach of fiduciary duty is subject to a three-year period of limitations, and it "accrues when the beneficiary knew or should have known of the breach." *Prentis Family Foundation v Barbara Ann Karamanos Cancer Institute*, 266 Mich App 39, 47; 698 NW2d 900 (2005) (quotation marks and citation omitted).

---

[3] In an effort to provide finality to this issue, even if we were to assume that petitioner was asserting a claim based on being a third-party beneficiary of Spicer's actions, while caselaw holds that an intended third-party beneficiary of an attorney-client relationship may be able to bring a malpractice action against an attorney who failed to draft a will that properly carried out the testator's intended distribution scheme, *Maki*, 318 Mich App at 542-544, because petitioner does not contend that anything Spicer drafted for Donald did not comport with Donald's wishes, that claim also fails.

In her legal submissions, petitioner has not articulated a foundation for her claim of reliance on Spicer, presenting only nebulous assertions of trust. Nonetheless, it is plausible that petitioner could qualify as a "trust beneficiary" of the Doris Trust under MCL 700.7103(*l*), given her assertion that the Barbara Trust should have been funded by the Doris Trust, thereby potentially affording her a contingent beneficial interest therein. Consequently, pursuant to MCL 700.7905(1), she may initiate "a proceeding against a trustee for breach of trust" within one year of receiving a report that discloses the existence of a viable claim. However, the crux of petitioner's claim regarding the Doris Trust is fundamentally flawed, as Spicer was never a trustee of the Doris Trust. Thus, any claim against Spicer for breach of trust is precluded due to his lack of trustee status.

Additionally, petitioner contends that portions of the Marital Trust were inappropriately diminished during Donald's lifetime, allegedly converted into personal assets. At that juncture, Donald and Comerica Bank served as the sole trustees; hence, any breach of fiduciary duty would rest with them. Petitioner further claims, albeit in conclusory terms, that Spicer failed to transfer Marital Trust assets into the Family Trust. However, she does not concretely assert that the assets held in the Marital Trust at the time of Donald's death were not subsequently allocated as per the directives of the Doris Trust. Even if Spicer exercised trustee powers post-Donald's death, the alleged detriment had already occurred by that point.

Moreover, the Marital Trust is not an autonomous entity separate from the Doris Trust. No independent trust document exists for the Marital Trust; it is, in fact, established and governed by the provisions of the Doris Trust. The Doris Trust instructs its trustee—who is not Spicer—to allocate its assets into the Marital Trust, Descendants Trust, and Family Trust. The Marital Trust encompasses assets excluded from both the Family Trust and the Descendants Trust. Following Donald's death, any accrued and undistributed income was to be allocated to Donald's estate, with remaining assets transferred to the Family Trust. Only the Family Trust provides any mechanism for the transfer of assets to the Barbara Trust.

In summary, the Marital Trust does not constitute a standalone trust from which Barbara could claim to be a "trust beneficiary" under MCL 700.7103(*l*). Her contingent beneficial interest, if any, lies within the Doris Trust or potentially the Family Trust. While petitioner has identified herself as a beneficiary of the Doris Trust, the Donald Trust, and Donald's estate, she has notably failed to position herself as a beneficiary of the Marital Trust. Accordingly, for the reasons articulated, petitioner is precluded from bringing claims against Spicer for breach of either the Doris Trust or the Marital Trust.

VI. CONVERSION

Petitioner asserts that the trial court made an error in determining that her claims of conversion were barred by the statute of limitations. "[C]onversion is a wrongful act of dominion over another person's property." *Tillman v Great Lakes Truck Ctr, Inc*, 277 Mich App 47, 49; 742 NW2d 622 (2007). The period of limitations for conversion is three years under MCL 600.5805(2). *Id*.

Petitioner's primary allegation of conversion involves Spicer withdrawing approximately $2.6 million from the Duchene Foundation or various "FBO accounts." Petitioner posits that these

withdrawals constitute conversion because the assets of the Duchene Foundation should have been transferred to the Barbara Trust. She characterizes the payments originating from the FBO accounts as "trustee fees," asserting that Spicer administered these accounts under the "false pretenses" of them being trusts established by the Donald Trust. However, her precise interpretation of this claim remains ambiguous.

From what we can glean from petitioner's complaint, the alleged wrongful dominion over the property, which the petitioner believes should have been allocated to Barbara, is said to have commenced in 2013 when Spicer allegedly "seized control of" the Donald Trust and the Duchene Foundation. In any case, no alleged wrongful dominion could have occurred after Donald's death in 2015. Consequently, petitioner's conversion claim is intrinsically linked to her assertion that Spicer violated the provisions of the Doris Trust or disrupted the estate distribution plans of Doris. Notably, any act of conversion would have been finalized long before three years prior to the initiation of the current legal action. Consequently, this claim is barred by MCL 600.5805(2). *Tillman*, 277 Mich App at 49.

VII. RICO

Next, petitioner argues that she has a viable claim under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 USC 1961-1968. RICO "created four new criminal offenses involving the activities of organized criminal groups in relation to an enterprise," and "also created a new civil cause of action for any person injured in his business or property by reason of a violation of those prohibitions." *RJR Nabisco v European Community*, 579 US 325, 329; 136 S Ct 2090; 195 L Ed 2d 476 (2016) (quotation marks, brackets, and citations omitted).[4] A civil RICO claim has a four-year limitations period. *Agency Holding Corp v Malley-Duff & Assoc, Inc*, 483 US 143, 152-157; 107 S Ct 2759; 97 L Ed 2d 121 (1987). A civil RICO claim accrues when the plaintiff knew or should have known of the injury. *Rotella v Wood*, 528 US 549, 553-554; 120 S Ct 1075; 145 L Ed 2d 1047 (2000). A plaintiff seeking to bring a civil RICO claim must exercise reasonable diligence to investigate and uncover the unlawful activity. *Klehr v AO Smith Corp*, 521 US 179, 194-195; 117 S Ct 1984; 138 L Ed 2d 373 (1997). A civil RICO claim "seek[s] not only to compensate victims but also to encourage those victims themselves diligently to investigate and thereby to uncover unlawful activity." *Id*. at 195.

Here, the alleged wrongful conduct involves either persuading Donald to modify his will and the Donald Trust to redirect familial assets into accounts not designated by the Doris Trust, or facilitating Donald's control over assets that were supposed to be protected within the Marital Trust. These alleged wrongful actions were evidently finalized by 2013, and no later than 2015. Petitioner asserts that she became aware of her purported injury in the spring of 2022 when Spicer provided her with her parents' estate documents and tax returns. However, the evidence suggests that petitioner should have recognized her injury much earlier. She was aware she was receiving funds from the trust, acknowledged Donald's death, and held a position as an officer of the

---

[4] This Court is bound by decisions of the United States Supreme Court construing federal law. *Abela v Gen Motors Corp*, 469 Mich 603, 606; 677 NW2d 325 (2004), cert den 543 US 870; 125 S Ct 98; 160 L Ed 2d 117 (2004).

Duchene Foundation. Additionally, all tax filings from the Duchene Foundation were publicly accessible and could have been retrieved at any time. Hence, the evidence points to petitioner being cognizant that she was lacking crucial information held by Spicer at least at the time of Donald's passing, yet she opted not to pursue further inquiries. It is clear that petitioner failed to exercise reasonable diligence, leading to the conclusion that her potential civil RICO claim is time-barred. *Klehr*, 521 US at 194 ("…we conclude that 'reasonable diligence' does matter, and a plaintiff who is not reasonably diligent may not assert 'fraudulent concealment'").

## VIII. DISCOVERY RULES

Petitioner contends that the doctrine of discovery tolling applies to her claims, positing that her claims are not time-barred as a result. She relies on MCL 600.5855, which states that if a party "fraudulently conceals the existence of the claim," the action may be initiated within two years after the claimant discovers, or should have discovered, the existence of said claim, notwithstanding the expiration of the limitations period. For the purposes of compliance with MCL 600.5855, establishing fraudulent concealment necessitates more than mere silence; the plaintiff must demonstrate that the defendant engaged in some affirmative act or contrivance that is explicitly designed to impede subsequent discovery of the claim. *Prentis Family Foundation*, 266 Mich App at 48. In cases involving a fiduciary relationship, there may exist an affirmative duty of disclosure that alleviates the need for an overt act of concealment. *The Reserve at Heritage Village Ass'n v Warren Financial Acquisitio*n, LLC, 305 Mich App 92, 123; 850 NW2d 649 (2014). Nonetheless, the party asserting fraud must exercise reasonable diligence in pursuing their claim. *Prentis Family Foundation*, 266 Mich App at 48 & 45 n 2. Here, petitioner fails to allege any affirmative act of concealment and, for reasons previously articulated, does not adequately establish that Spicer owed her a fiduciary duty or that she exercised reasonable diligence.

Additionally, petitioner asserts that her conversion claim is not time-barred under MCL 700.1205(3). This statute provides, in pertinent part, that if fraud is committed in connection with a proceeding or in a filing under this act, or if fraud is employed to subvert the provisions or objectives of this act, an injured party may seek appropriate relief against the perpetrator of the fraud or restitution from any party that benefited from the fraud, regardless of innocence. The statute mandates that an action must be initiated within two years of the discovery of the fraud, but precludes action against a non-perpetrator after a five-year repose period from the commission of fraud.

However, MCL 700.1205(3) is specifically limited to instances of fraud "in connection with a proceeding or in a statement filed under [the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq*.]" or fraud "used to avoid or circumvent the provisions or purposes of [EPIC]." Petitioner's reliance on this statute is misplaced, as the alleged fraud does not fall within its ambit. Petitioner invokes this statute in an effort to salvage her conversion claim, yet the asserted fraud appears to fundamentally consist of failures to disclose pertinent facts or attempts to persuade Donald to ignore the estate plans set forth by Doris. The claim fails on the former as petitioner has not established any obligation on Spicer's part to disclose those facts; the latter claim is equally deficient, as Spicer was neither the trustee of the Doris Trust nor Doris's personal representative. The actions contravening Doris's estate plans were executed by Donald, thereby rendering the five-year period of repose applicable. Furthermore, petitioner vaguely asserts that the probate file for Donald's estate should evidently reveal Spicer's involvement in fraudulent conduct; however, "[t]rial courts are not the research assistants of the litigants; the parties have a

duty to fully present their legal arguments to the court for its resolution of their dispute." *Walters v Nadell*, 481 Mich 377, 388, 751 NW2d 431 (2008).

Affirmed. Respondents, being the prevailing parties, are entitled to tax costs. MCR 7.219(A).

/s/ Kathleen A. Feeney
/s/ Stephen L. Borrello
/s/ Anica Letica