JESSE SPALDING v. ALFRED A. ARCHIBALD AND THE CHICAGO & NORTHWESTERN RAILWAY COMPANY.

*Statute of frauds—a void sale valid as a license.*

1. If the parties to a sale that would be void under the statute of frauds, choose to treat it as valid, it will be so as to them, and may become effectual for all purposes.

2. An oral sale of the stumpage on cedar land, though void under the statute of frauds, is valid as a license to cut the timber, until it is revoked; and when the timber is cut the title to it passes because the right thereto has become a chattel interest.

3. It is for a jury to decide whether an oral authority has been correctly construed.

4. A licensor's actual knowledge that his consent has been acted on is not necessary to the protection of the licensee; he is bound to assume that it has.

Error to Menominee.   (Grant, J.)   Oct. 31.—Dec. 21.

REPLEVIN.   Plaintiff brings error.   Affirmed.

*B. J. Brown* for appellant.   A sale essentially differs from a mere license: *Greeley v. Stilson* 27 Mich. 157; a contract of sale of standing timber is a sale of an interest in real estate: *Russell v. Myers* 32 Mich. 522; and the contract cannot be available as a contract unless an action can be brought upon it: *Carrington v. Roots* 2 M. & W. 248; a license must be acted on by both parties: *Haskell v. Ayres* 35 Mich. 90; *Wetmore v. Neuberger* 44 Mich. 366; *Pierrepont v. Barnard* 6 N. Y. 279 cited in 2 Am. Lead. Cas. 565; authority to an agent to sell an interest in land must be written: *Wallace v. McCollough* 1 Rich. Eq. 426

*B. C. Cook* and *H. O. Fairchild* for appellee.   Sales of stumpage with the privilege of entering on the lands to cut and remove the timber are not within the statute of frauds as sales of an interest in realty; *Morrill v. Mackman* 24 Mich. 283; *Wetherbee v. Green* 22 Mich. 311; *Greeley v. Stilson* 27 Mich. 153; *Sovereign v. Ortmann* 47 Mich. 181; *Detroit, Hillsdale & Ind. R. R. Co. v. Forbes* 30 Mich. 165; *Erskine v. Plummer* 7 Greenl. 447; *Claflin v. Carpenter* 4 Met. 580; *Tyson v. McGuineas* 25 Wis. 656; *Lockhart v. Geir* 54 Wis. 133.

COOLEY, J.   Replevin for eleven hundred cedar telegraph poles.

The plaintiff in the years 1880 and 1881 was engaged in the business of getting out ties, posts and telegraph poles from lands belonging to himself and others in the vicinity of Spalding in Menominee county.   The poles in question were cut in the winter of 1880–81, and as plaintiff claimed were delivered to him by one Leon Lacroix under a verbal contract whereby Lacroix had engaged to cut poles for plaintiff on lands owned by him on section six in township thirty-eight north of range twenty-six west.   The poles, however, were not all cut on section six, but some were cut on the southwest quarter of section eight, and some on the south half of the northwest quarter of section eight.   The defendant Archibald, on the other hand, claimed that eight hundred of the poles were cut by Lacroix from the northwest quarter of section eight, and that the remainder were bought by Lacroix from one Poquin, who had cut them on some part of section eight.   It is not disputed that all the lands from which poles were taken belonged to the plaintiff.

Lacroix was a witness for defendant, and testified that he got out 800 of the poles on the northwest quarter of section eight, and that he bought the others of Poquin.   He was then permitted to state, under objection by the plaintiff, that he went to Spalding to see if he had cedar land for sale, or jobs to give; that Spalding said he did not know whether there was cedar on the land or not, but told him to

go to Hagerson and what Hagerson said would be all right; that he did go to Hagerson, who sent one Allen with him to look at a forty on section eight; that Allen made his report to the office, and witness then went to Hagerson and told him he had seen the cedar and would take it at a price which had been talked about, and Hagerson said "All right"; that witness had dealings with Spalding and had a pass-book, and Hagerson took the pass-book and made an entry as follows: "Dec. 30, 1879. Stumpage on N. $\frac{1}{2}$ of N. W. $\frac{1}{4}$ of sec. 8, $85." The Allen mentioned was foreman for plaintiff, and showed people land when they wanted to buy.

Similar evidence was given of a purchase by Poquin of cedar trees on another part of section eight, but it was testified by Poquin that after he had cut for a time Hagerson told him to stop cutting, because the trees cut were in the way of other persons who were using a wood road. Poquin interpreted this as leaving him at liberty to cut, provided he did not obstruct the road, and he continued to do so, and sold what he cut to defendant. He cut ties on the same land at the same time, and delivered them to the railroad company with directions to pay the price to Spalding.

Plaintiff's objection to all this evidence was that it tended to show a parol sale of an interest in lands. Such a sale, it was truly said, would be void under the Statute of Frauds: *Russell v. Myers* 32 Mich. 522; *Putney v. Day* 6 N. H. 430; s. c. 10 Am. Dec. 470; *Owens v. Lewis* 46 Ind. 488: s. c. 15 Am. Rep. 295, where numerous authorities are collected. This position is not disputed by the defendant.

But it does not follow, because a sale is void under the Statute of Frauds, the purchaser can derive no title under it. Such a sale is void only at the option of the parties concerned; and if they elect to treat it as valid, it may become effectual for all purposes. And commonly, even if not wholly affirmed, it will operate as a license which will protect the purchaser against liability for anything done under it prior to any act of revocation.

A license very often assumes the form of a sale, and it only fails to become a sale because of not being put in legal form. If we believe the testimony of Lacroix and Poquin, such was the case here; they bargained for a purchase from Spalding with his agent Hagerson, but the subject of the bargain was an interest in lands, and to render it effectual a deed was necessary but was not given. The whole transaction was therefore invalid from the first, and either party might have refused to recognize or act upon it. If they had done so, no rights could have sprung from the negotiations. But Lacroix and Poquin went on and cut the poles, without objection or protest, except as hereinbefore mentioned, and the question now is, what rights were acquired by them or what liabilities incurred thereby? Had they done the cutting under an oral permission given as a mere favor to them, or for the benefit of Spalding himself, the permission would have been a license which would have given them ample protection; but it was not the less a license by reason of having assumed the form of a sale, and been paid for. The essence of the license is in the permission to do what was done; the purpose or consideration of the permission is commonly of no importance.

But the attempted sale was not restricted in its force to the protection of the parties from being held trespassers for what they may have done under it; for to the extent that trees were cut under it before revocation it took effect as a sale, and passed the title to the licensee who thereby became purchaser under it. The permission to cut and remove must be understood as continuous until actually recalled; and as fast as the trees were severed from the realty by the cutting, the contract of sale attached to them as chattels, and the parties cutting were entitled to remove them as their own. This doctrine is abundantly affirmed in our own decisions: *Greeley v. Stilson* 27 Mich. 157 ; *Haskell v. Ayres* 35 Mich. 90 ; *Wetmore v. Neuberger* 44 Mich. 362 ; and is also generally recognized elsewhere as a reference to a few of the leading cases will show. *Yale v. Seely* 15 Vt. 221; *Claflin v. Carpenter* 4 Met. 580 ; *Erskine v. Plummer* 7

Me. 447: s. c. 22 Am. Dec. 216 ; *Pierrepont v. Barnard*
6 N. Y. 279 ; *Owens v. Lewis* 46 Ind. 488 : s. c. 15 Am.
Rep. 295. It was suggested on the part of the plaintiff
that to give the transaction this effect it should be shown
that he had actual knowledge that the cutting was proceed-
ing ; but this was not important :  he was bound to assume
his consent would be acted upon.

The plaintiff contends that whatever authority Poquin
had to cut poles was revoked; and we have seen how he
construed what was said to him on that subject. Whether
he was right or wrong in this construction was a question
for the jury: *McKenzie v. Sykes* 47 Mich. 294; but the
plaintiff did not request that it be specifically submitted to
the jury, and there is no ruling of the circuit judge in
respect to it for us to review.

It is, as we think, of no importance in the case that the
invalid sale was made by Hagerson instead of by Spalding
in person.  Had Hagerson, without authority to sell inter-
ests in lands, assumed to grant such licenses at his own
instance, they would have been void even as licenses ; but
here the case which the jury believed was that the parties
who bargained with Hagerson were sent to him for that
purpose by Spalding himself; and if that was the case the
licenses granted stand on no different footing than if Spald-
ing in person had given them.

Some other points are made in the brief for the plaintiff,
which we have considered and do not think are well taken.
They rest so exclusively upon the peculiar facts of the case
that their discussion could do nothing towards settling any
general principle, and is therefore unimportant.

We find no error in the record, and the judgment must
be affirmed with costs.

The other Justices concurred.