CASE *v.* RANNEY.

1 MORTGAGES—DEED GIVEN AS SECURITY—REMEDIES.
   At law, in order that a mortgage may exist, an indebtedness to the grantor is essential; it is not sufficient that a third person is entitled to the benefit of the defeasance.

2. SAME—REDEMPTION—EQUITABLE INTEREST.
   In order that a plaintiff may recover in an action on the case for neglect of his attorney or agent to protect his interest in property subject to a mortgage debt, plaintiff must show that he had some equity of redemption or other recognized
   174 MICH.—43.

interest, and a showing of an oral arrangement to convey to plaintiff made by the record owner does not support such action.

3. ATTORNEY AND CLIENT — CONTRACTS — CAPIAS AD RESPONDENDUM.

Upon a writing executed by defendant to plaintiff acknowledging liability to his client, the plaintiff, in a specified sum, for neglect to apply rentals received on an incumbrance against property entrusted to his management, only an action of assumpsit would lie: the right to a *capias ad respondendum* could not be based on the written instrument.

4. SAME.

On testimony showing that defendant was an attorney and real estate dealer, that plaintiff consulted him as an attorney and placed property in his hands to collect rentals and manage, that defendant who claimed he never held himself out or practiced as an attorney, had written letters to plaintiff on a letterhead describing him as attorney and real estate dealer, the question whether defendant acted in a professional capacity within the meaning of the statute authorizing the arrest of persons acting in professional capacity for neglect, etc., 3 Comp. Laws, § 9996 (5 How. Stat. [2d Ed.] § 12659), was properly submitted to the jury as a question of fact.

5. SAME—RENTS—PERSONAL PROPERTY.

While rentals from real estate may be an interest therein before they are collected or converted into money, after collection they become personal property and are assignable by parol.

6. SAME—ESTOPPEL.

Where defendant arranged with plaintiff to collect rentals from real estate which plaintiff claimed to own by virtue of a parol agreement with his son, who gave plaintiff full charge and executed a deed in blank, the grantee's name to be thereafter inserted by plaintiff, who, in pursuance of the arrangement, added defendant's name as grantee, and where plaintiff twice sued defendant in justice's court for a part of the rental collected, which defendant paid without claiming that the son was the true owner, not raising such contention until an action was commenced by plaintiff to recover for defendant's negligence in failing to apply rentals on a mortgage against the property, *held*, that defendant was estopped from disputing plaintiff's claim to rents paid to and received by defendant as plaintiff's agent.

Error to Wayne; Murphy, J. Submitted January 8, 1913. (Docket No. 26.) Decided April 8, 1913.

Case by George F. Case against Frederick T. Ranney for negligent loss of property by foreclosure of a mortgage on which defendant neglected or failed to pay rents collected as plaintiff's attorney or agent. Judgment for plaintiff. Defendant brings error. Reversed unless plaintiff remit part of the judgment.

*Lucius H. Collins* and *Stewart O. Van De Mark* (*Geer, Williams, Martin & Butler*, of counsel), for appellant.

*A. B. Hall*, for appellee.

STEERE, C. J. In this case plaintiff recovered a judgment against defendant in the Wayne county circuit court for the sum of $4,099 in an action of trespass on the case for misconduct in professional employment, breach of trust, and fraudulent conversion of funds. The action was commenced by writ of capias based on affidavits made by plaintiff and his then attorney, was duly indorsed by one of the circuit judges of Wayne county with an order to hold to bail in the sum of $3,000, and was issued November 28, 1910. Bail was furnished, pleadings perfected, and the case brought to trial in said court before a jury in October, 1911, resulting in a verdict and judgment in plaintiff's favor as stated, and defendant has now brought the proceedings here for review on a writ of error.

Defendant was a member of the bar of Wayne county, and engaged in the real estate business in the city of Detroit. The litigation arose over his conduct in connection with certain real estate situated in said city, which had been conveyed to him under an arrangement that he should remortgage it for the purpose of paying off a former mortgage, then past due, assume the management of said property, and sell it when possible. The property, valued at about $7,000, was located at the southwest corner of

Milwaukee avenue and Sixteenth street. It consisted of two and a fraction lots upon which were three brick veneered eight-room houses, which together brought a monthly rental of from $58 to $60. Plaintiff testified that he bought or procured this property in a trade prior to 1907, it then being subject to a mortgage of $3,500, and caused it to be deeded to his son John W. Case in consideration of "past favors;" that while living in Detroit his son had managed it himself, but later, when he went away to Illinois to live, had left it in charge of plaintiff to collect the rents and sell it if possible; that plaintiff thereafter, having also decided to leave Detroit and permanently make his home in Georgia, where he had been living more or less for several years, put the property into the hands of defendant, whom he had known for 15 years, and to whom he went, when he decided to leave Detroit, "to consult him as my attorney and as a man who would take care of the property. My son had moved away, and left it all to me to handle, and I was going away, so I left it to Mr. Ranney."

It is undisputed that the mortgage for $3,500, which was against the property when it was deeded to plaintiff's son, John W. Case, remained, was past due, and payment was being insisted upon. Plaintiff was desirous of raising money to pay this off by a new mortgage on the property, and appealed to defendant to assist him. This the defendant undertook to do. As a result of their negotiations at that time plaintiff turned over to defendant a deed of the property from his son. This deed had been delivered to plaintiff, duly witnessed, executed and acknowledged, but with the space for the grantee's name left blank, so that in case of a sale the name of the purchaser could be quickly inserted, and the deal closed without delay. It bore date October 8, 1907. Plaintiff inserted defendant's name in the deed as grantee, and delivered the instrument to him.

Plaintiff testified this was done at the suggestion and by

the advice of defendant, who represented it would thereby become more convenient and expeditious for him to control, manage, and sell the property. This defendant denies, claiming plaintiff took such action of his own accord, without suggestion and for the reason, as stated by plaintiff, that he was going away, and desired defendant to have full control of the matter. They agree that defendant was to secure and assume a new mortgage, pay off the old, manage and negotiate a sale of the property as soon as possible. It appears undisputed that he did borrow $3,500 from a man named Brabb, secured by a new mortgage given by him on the property, and with the money thus obtained he paid off the old mortgage.

Plaintiff went away to Georgia, leaving the matter in defendant's hands. Defendant collected the rent from October 1, 1907, to July, 1910, amounting to $1,599.50, when the property passed out of his hands by reason of the equity of redemption having expired on foreclosure of the Brabb mortgage, which he had given and on which he had defaulted, having paid no interest nor principal on said mortgage, nor taxes on the property. On December 10, 1909, he paid plaintiff $50, and later, under pressure of plaintiff's attorney, paid $350 more. According to his own statement of accounts, he expended in repairs on the property, for water tax, and general maintenance an amount which, deducting 2 per cent. for negotiating the mortgage loan of $3,500 and 5 per cent. for collecting rent, left in his hands $537.87, which he testifies he did not apply in payment of interest on the mortgage or taxes nor pay over to plaintiff, because he was hard up, owing to some other matters, and could not raise it, and also because plaintiff had promised to raise money and pay off the mortgage defendant had given, but did not do so. After putting the property in defendant's hands, in October, 1907, plaintiff was absent in Georgia until 1909. He corresponded with defendant, but could obtain no remittances nor a satisfactory account of the condition of the

business, and in August, 1909, on returning to Detroit, and after interviewing defendant, he consulted Mr. Codd, an attorney, and later put the matter in his hands, because, as plaintiff testified, he could get no money and no satisfaction out of defendant. As the result of advice given by Mr. Codd, plaintiff, while in Detroit in August, 1909, obtained a written statement from defendant acknowledging that the deed of October 8, 1907, from John W. Case to himself was not an absolute conveyance, but in the nature of a mortgage to secure an indebtedness of $3,500, and that he was obligated to reconvey the title upon payment of said indebtedness on or before October 8, 1910, and to account for all rents and profits from said property between October 8, 1907, and October 8, 1910. Plaintiff also obtained from defendant at about the same time a statement showing a balance due from defendant on August 25th of $182.46. In this were credited items of interest and taxes amounting to over $500 which defendant in fact never paid. After plaintiff returned to Georgia, in the latter part of 1909, Attorney Codd, in his behalf, had numerous interviews with defendant, urging him to adjust the matter and pay up what was owing, at one time bringing suit against defendant in justice's court, which resulted in a payment of $200. Two payments were thus collected from defendant, the one $200 and a later one of $150.

On April 20, 1909, Brabb filed a bill to foreclose the mortgage for $3,500 given to him by defendant on the property. This foreclosure was first learned of by Attorney Codd in the latter part of January, 1910. Plaintiff testified that he learned of it in October, 1909, from some one sending him a clipping of the legal notice, which he mailed to Codd. The sale took place in January, 1910, after which there remained yet six months in which to redeem. Codd had numerous interviews with defendant after this time, which finally resulted in the following letter, written after the equity of redemption had expired:

"DETROIT, MICHIGAN,
                          "July 25, 1910.
"GEORGE P. CODD, ESQ.,
          "Detroit, Michigan.
"Dear Sir:
     "In reference to any proceedings against me in behalf of
your client, Mr. George F. Case, I beg to assure you that
I shall be in a position, on the 15th day of August, 1910,
to meet any and all obligations to Mr. Case, and recog-
nizing the loss of his property through my actions, I agree
that, if you and Mr. Case will postpone any action regard-
ing same, I will pay Mr. Case for his equity in the property
the sum of $3,000 in cash, on said day, together with such
amounts as may be due to him from moneys which I have
collected from said property during the time the same was
in my hands. In making this statement I will give com-
plete vouchers for all expenditures, and a statement of all
receipts, and I am only to be credited with such amounts
as have been paid out; in other words, the amount of
taxes, insurance and interest which I have heretofore
credited myself with are not to be allowed, and these
amounts are to be paid to Mr. Case, in addition to the $3,-
000. In other words, the actual balance of receipts and
expenditures, as shown by vouchers to be furnished by
me, is to be struck and accounted for to Mr. Case.
                                   "F. T. RANNEY."

     Defendant never paid the $3,000 or any part of it, as he
had agreed to do by the terms of said paper. He testified
that it was signed under duress, as the result of threats to
commence suit by capias and pressure brought to bear in
various ways by the attorney. This Codd denies. The
claim of duress, at most, would be a question of fact for
the jury.

     The various questions raised under the numerous assign-
ments of error are concentrated in the briefs of counsel to
the following contentions on behalf of defendant:

     "(1) If any obligations exist on the part of defendant,
they are not to plaintiff, but to his son John W. Case, the
owner of the property and who conveyed the same to de-
fendant.

     "(2) That the capias should have been quashed in this
case, not having been legally issued under section 9996,

Comp. Laws 1897, because it conclusively appears defendant was not acting in the capacity of an attorney, but merely as a real estate agent and dealer, conducting his office and advertising himself as such only.

"(3) Because the deed from John W. Case to defendant was only a mortgage for $3,500, which said John W. was under obligations to pay, and neither he, nor plaintiff, nor any one else for him, ever paid or tendered that amount on or before October 8, 1910, or at any other time, in default of which defendant was under no obligations, by reason of his writing of August, 1909, or otherwise, to advance the money and redeem said property from the foreclosure sale under the Brabb mortgage, or to reconvey said property, or to account for results therefrom.

"(4) Because there was a variance between the allegations in the affidavits for the writ of capias and the evidence introduced at the trial."

While plaintiff testified that the property was his, he also testified that he had it conveyed direct from the former owner to his son for "past favors that he had extended to me;" that his son took and cared for it and collected rents until he left Detroit, when he turned it back to plaintiff to collect rents and sell it if possible. Plaintiff never held title to the property. It was conveyed to his son by his direction for a valuable consideration from the son to him, he having but partly paid for it, there being a mortgage of $3,500 yet against it which plaintiff is not shown to have legally assumed, or paid; neither did he ever assume or agree to pay the second mortgage given by defendant, to secure payment of which defendant held from John W. Case, the owner of the fee, a deed conceded to be in its nature a mortgage. The evidence fails to show that plaintiff was ever indebted to defendant.

" At law, to constitute a mortgage, the grantor himself, and not a third person, must be entitled to the benefit of a defeasance." 2 Devlin on Real Estate (2d Ed.), § 1101.

In *Heaton* v. *Gaines*, 198 Ill. 479 (64 N. E. 1081), it is said:

"In order to establish the fact that a deed absolute up-

on its face is a mortgage, it must appear that a debt exist-
ed due from the person, claimed to be mortgagor, to the
person, claimed to be mortgagee. ' It is an essential ele-
ment of a mortgage that some obligation should exist to
be secured.' * * * The evidence in the present case
does not show, that there was any indebtedness existing
from Heaton to appellee, which it was the intention of the
parties to secure by the deed of December 21, 1883."

In the case at bar, while it is claimed in a general way
that plaintiff had some equitable interest or ownership in
this land, he testifies positively that he had it deeded to
his son for a valid consideration. When the son, on leav-
ing Detroit, turned the yet mortgaged property over to
him to collect the rents and sell, if possible, together with
a deed of the same, leaving the name of the grantee blank,
plaintiff avoided taking any tangible title to himself or
assuming any indebtedness in that connection, so fixing
the title as to be himself immune, and the indebtedness a
matter of record between his son and defendant. We do
not think he has shown any equitable interest in the land
entitling him to redeem, or which can be recognized in a
court of law as a basis to recover damages for a lost equity
of redemption. As a general proposition, the equity of
redemption appertains to and goes with the title to the
real estate, and is in law the property of the owner of the
fee. It is an interest in land, and as such cannot be orally
conveyed to another. It being conceded the deed to de-
fendant was a mortgage, the title in fee was in John W.
Case, the plaintiff's son, and defendant's acknowledgment
of the same contained a stipulation to "reconvey" upon
the payment of the indebtedness of $3,500, which defend-
ant never assumed, on or before October 8, 1910.

The letter of defendant to Attorney Codd of July 25,
1910, recognizing the loss of the equity of redemption
through defendant's delinquencies and promising to pay a
stated sum for such loss, is not sued upon, and could not
be made a ground of recovery in this action, sounding in
tort and begun by capias. An action to recover under

that agreement must necessarily be *ex contractu* in assumpsit on waiver of the tort.

We think the question of whether or not defendant acted in whole or in part as an attorney in this matter is clearly an issue of fact, and the court was not in error in submitting it to the jury under proper instructions.  Professional services in the legal profession are not limited to litigation.  In the matter of giving advice, managing a business, devising plans to meet contingencies, effect results and make collections, the professional services of an attorney often combine with services which ordinarily are not classed as strictly professional, and yet the employment as an entirety and the services as a whole are to be recognized as professional.  Whether in any case an attorney is professionally employed depends on the relations and mutual understanding of the parties, on what was said and done, and all the facts and circumstances of the particular undertaking.  Defendant was a member of the bar, but testified that he was not employed by plaintiff as such, had never engaged in the practice of the profession, nor advertised himself as an attorney; that he was employed only as a real estate agent and dealer and exercised no professional calling.  Plaintiff testified that he had known defendant for 15 years; that he went to consult him about this business as his attorney and as a man who would take care of the property; that he had consulted with him on legal matters before that time, always deemed him an attorney, and thought defendant had written plaintiff as such.  In verification of the latter statement he produced a letter signed by defendant, with a heading describing him as "Attorney, General Dealer in Real Estate," dated July 17, 1908, relative to a judgment of plaintiff's in a certain matter, inclosing an affidavit for plaintiff to sign and swear to, stating it was—

" To be filed in your case requesting the Wayne circuit court of this State to substitute me as attorney of record, on account of the decease of Mr. Kudner, the original attorney of record.

"It is essential that this be done before I can take any binding legal steps in the premises.

"If I cannot effect a satisfactory settlement without further procedure in the courts then I shall cause to be filed a judgment creditor's bill therein seeking the appointment of a receiver."

As to the money actually collected by defendant and wrongfully devoted to his own use, the trial court instructed the jury as follows:

"If you accept the defendant's version of the transaction, it would still follow, under the conceded facts of the case, that the plaintiff is entitled to a verdict for the sum of $599 against the defendant; for, under the admitted account obtaining between the plaintiff and the defendant, there is a balance of at least $599 owing from the defendant to the plaintiff."

We think that this statement, computing interest, is borne out by the record. The only suggestion to the contrary is the technical contention that the rent for which this money was collected was an interest in the real estate belonging to John W. Case, who held the legal title, and could not be orally assigned to plaintiff. This money collected by defendant was, when wrongfully converted, personal property, an ascertained and liquidated amount, confessedly collected for, claimed by, and then admitted to belong to plaintiff. Conceding that rents and profits are an interest in real estate before they are collected and converted into money, when collected the money is personal property, just as trees standing upon the land and a part of the realty become personal property when cut and severed from it.

In *Spalding* v. *Archibald*, 52 Mich. 365 (17 N. W. 940, 50 Am. Rep. 253), it was said of an oral contract for the sale of standing timber "as fast as the trees were severed from the realty by the cutting, the contract of sale attached to them as chattels, and the parties cutting were entitled to remove them as their own." Plaintiff's testimony that the possession, control, and right to rents and profits of this land was given back to him by his son is

undisputed. Defendant dealt in relation to this property only with plaintiff. He collected the rent for him, accounted to him, and paid what he did pay to him. When sued by plaintiff in justice's court for part of it, he made no defense, and ultimately paid the judgment. He repeatedly by word and deed admitted plaintiff's ownership, and never questioned it until he raises it now in this suit as a technical defense to escape the payment of money collected by him and fraudulently misappropriated. The equitable doctrine of estoppel can be legally and most appropriately applied under the facts relating to that branch of the case.

Should plaintiff elect to remit the judgment down to $599, with legal interest from the time it was rendered, the same will stand affirmed; otherwise the judgment must be reversed and a new trial granted. Appellant will recover costs in this court in either event.

MOORE, McALVAY, BROOKE, KUHN, STONE, OSTRANDER, and BIRD, JJ., concurred.