*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

AUBURN SALES, INC., and DORNE RIGBY,

        Plaintiffs-Appellants,

v

ERIC R. BRYEN, ERIC R. BRYEN, PC, LAW OFFICES OF STUART J. SNIDER, STUART J. SNIDER, MOHAMMED M. ALOMARI, and AZIMUTH LEGAL SERVICES, PLLC,

        Defendants,

and

ARNOLD S. WEINTRAUB and THE WEINTRAUB GROUP, PLC,

        Defendants-Appellees.

UNPUBLISHED
March 30, 2023

No.   360574
Oakland Circuit Court
LC No.   2019-177312-NM

Before:  CAVANAGH, P.J., and MARKEY and BORRELLO, JJ.

PER CURIAM.

In this legal malpractice action, plaintiffs, Auburn Sales, Inc., and Dorne Rigby[1] (collectively Auburn) appeal by right the trial court's order granting summary disposition under MCR 2.116(C)(10) in favor of defendants, Arnold Weintraub and The Weintraub Group, PLC (collectively Weintraub).  We reverse and remand for the most part, affirming on a single issue involving unjust enrichment.

## I.  BACKGROUND

A business dispute arose between Auburn and Cypros Trading & Shipping, Inc. (Cypros). Auburn would purchase Chrysler automotive parts from Chrysler intermediaries and then sell the

---

[1] Dorne Rigby was the sole owner and president of Auburn Sales, Inc.

parts to Cypros. But this business relationship ended when the Federal Bureau of Investigation FBI raided Cypros's warehouse and charged its president with trafficking in counterfeit goods. Unbeknownst to Auburn, Cypros obtained counterfeit parts, mixed these counterfeit parts with the authentic Chrysler parts bought from Auburn, and then sold the comingled parts to their customers in the Middle East. Thereafter, Chrysler terminated the supply chain between its intermediaries and Auburn, resulting in Auburn's going out of business.

Auburn contacted and hired defendant, attorney Eric Bryen, to represent Auburn in a lawsuit against Cypros. The retainer agreement between Auburn and Bryen contained the following provision:

> **Who will work on your matter.** I will be the attorney responsible for your matter. For efficiency purposes, I may delegate work to other lawyers, including . . . Weintraub and [defendant] Snider, or legal assistants.

Bryen, on behalf of Auburn, filed a complaint against Cypros in the United States District Court for the Eastern District of Michigan, alleging claims of (1) intentional interference with a business relationship, (2) intentional interference with a prospective economic advantage, (3) breach of contract, and (4) negligence.[2] Weintraub filed an appearance in the federal district court as co-counsel for Auburn, entitling Weintraub to service of court filings. The federal district court summarily dismissed all of Auburn's claims and denied its motion for reconsideration.[3] Auburn appealed the federal district court's ruling with respect to the dismissal of the breach of contract and two intentional interference claims to the United States Court of Appeals for the Sixth Circuit, which was unsuccessful. *Auburn Sales, Inc v Cypros Trading & Shipping, Inc*, 898 F3d 710, 713 (2018) (no showing of an intent to interfere with Auburn's business relationships as necessary to support tortious interference claims, and, given the absence of a written contract between Auburn and Cypros, no compliance with the statute of frauds in regard to the breach of contract claim).[4] Auburn did not appeal the dismissed negligence claim, which the federal district court had found was barred because it was identical to and indistinguishable from the failed breach of contract claim.

Next, Auburn filed the instant legal malpractice action against defendants, all of whom were eventually dismissed by stipulation except for Weintraub. Auburn alleged in the complaint that defendants had breached their duty of care by failing to have adequately pleaded, argued, and advanced—below and on appeal—the negligence and tortious interference claims, as well as by failing to have pleaded claims of unjust enrichment, fraud, and violation of the Racketeer

---

[2] Also named as defendants in the underlying action were Joseph and Fadi Kilani, but for ease of reference, we simply refer to Cypros when discussing the lawsuit brought by Auburn in the federal district court.

[3] Documentary evidence reflected that Cypros filed a counterclaim that was later dismissed on a motion for summary disposition pursued by Auburn.

[4] These were also the reasons given by the federal district court for summarily dismissing the three claims.

Influenced and Corrupt Organizations Act (RICO), 18 USC 1961 *et seq*. Additionally, Auburn contended that defendants had "failed to recognize and understand how fragile their allegations of breach of contract were because of the Statute of Frauds."

Weintraub moved for summary disposition of Auburn's malpractice claims under MCR 2.116(C)(10), arguing that Weintraub was Bryen's subagent who owed no duties to Auburn and was not involved in decision-making with respect to the specific claims of legal malpractice raised by Auburn, that Weintraub's performance was not the factual or legal cause of Auburn's injuries, and that Auburn's proffered alternative theories of recovery in the federal suit were not viable as a matter of law. Auburn responded that there was a genuine issue of material fact regarding whether Auburn and Weintraub had an attorney-client relationship, whether a percentage of fault could be attributed to Weintraub even though Bryen was the principal attorney, and whether Weintraub's performance was a cause of Auburn's injuries. In support of its position, Auburn contended that Weintraub (1) filed an appearance, (2) participated in drafting the complaint, (3) was introduced as part of the legal team, (4) was expressly named in the retainer agreement, (5) shared office space with Bryen, (6) worked on dispositive motions, and (7) worked on a settlement. In reply, Weintraub maintained that the law of agency limited the scope of its duties to Auburn, which duties were defined by the tasks Bryen delegated to Weintraub, none of which formed the basis of Auburn's malpractice claims. We shall explore the documentary evidence submitted by the parties in detail in our analysis section.

Although the trial court rejected most of Weintraub's causation-related arguments, the court summarily dismissed the entire malpractice lawsuit by agreeing with Weintraub on the issue concerning the scope of the duty owed to Auburn. The court first concluded that Weintraub was "not involved in the areas where the alleged malpractice occurred" and that "there [was] nothing to contradict the limited scope of [Weintraub's] involvement." In support of this ruling, the trial court noted that "[t]he agent, or in the case at bar the sub-agent, is only responsible for actions within the scope of the agency relationship." The court further indicated that the documentary evidence, when viewed in a light most favorable to Auburn, "would not permit a reasonable juror to return a verdict in [Auburn's] favor."

With respect to causation, the trial court addressed the issue in the context of the claims that Auburn argued Weintraub should have advanced or approached differently in the underlying action. First, in regard to unjust enrichment, the court agreed with Weintraub that "such a claim would not have been successful under the particular facts of this case." Next, in relation to bringing a fraud claim against Cypros, the trial court concluded that viewing "the evidence in the light most favorable to [Auburn], it is possible this claim could have been successful" and that there existed "a sufficient question of fact that summary disposition is inappropriate as to this argument." The trial court further ruled that an alternatively-framed negligence claim "may . . . have been successful in the underlying action"; therefore, "[s]ummary disposition is inappropriate as to this claim." With respect to the tortious interference claims, the court found that the claims could potentially have been successful against Cypros had Weintraub "marshalled the evidence as claimed by" Auburn. Accordingly, the trial court ruled that viewing the evidence in a light most favorable to Auburn, it was possible that a reasonable juror could have returned a verdict in Auburn's favor in regard to the tortious interference claims and thus summary disposition was denied. Finally, relative to the RICO-based argument, the trial court found that there existed a question of fact concerning whether Auburn would have been successful against Cypros had a

RICO claim been filed in the underlying action. Therefore, Weintraub's motion for summary disposition was denied in this regard. In sum, the trial court granted summary disposition in favor of Weintraub under MCR 2.116(C)(10) on the basis that Weintraub was "not involved in the decisions which led to the alleged malpractice." As to causation, only Weintraub's argument that there would have been no valid unjust-enrichment claim served as a basis to grant its motion for summary disposition. But Weintraub was not entitled to summary disposition in regard to causation in the context of Auburn's assertions concerning the fraud, negligence, tortious interference, and RICO claims. Subsequently, the trial court denied Auburn's motion for reconsideration, and this appeal ensued.

## II. ANALYSIS

### A. STANDARD OF REVIEW AND PRINCIPLES OF SUMMARY DISPOSITION UNDER MCR 2.116(C)(10)

This Court reviews de novo a trial court's ruling on a motion for summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). "Whether a defendant owes a particular plaintiff a duty is a question of law that this Court [also] reviews de novo." *Bailey v Schaaf*, 494 Mich 595, 603; 835 NW2d 413 (2013).

MCR 2.116(C)(10) provides that summary disposition is appropriate when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." A motion brought pursuant to MCR 2.116(C)(10) tests the factual support for a party's action. *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013). "Affidavits, depositions, admissions, or other documentary evidence in support of the grounds asserted in the motion are required . . . when judgment is sought based on subrule (C)(10)," MCR 2.116(G)(3)(b), and such evidence, along with the pleadings, must be considered by the court when ruling on the (C)(10) motion, MCR 2.116(G)(5). "When a motion under subrule (C)(10) is made and supported . . ., an adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial." MCR 2.116(G)(4).

"A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmovant, show that there is no genuine issue with respect to any material fact." *Pioneer State*, 301 Mich App at 377. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10). *Pioneer State*, 301 Mich App at 377. "Like the trial court's inquiry, when an appellate court reviews a motion for summary disposition, it makes all legitimate inferences in favor of the nonmoving party." *Skinner v Square D Co*, 445 Mich 153, 162; 516 NW2d 475 (1994). "[S]peculation is insufficient to create an issue of fact." *MEEMIC Ins Co v DTE Energy Co*, 292 Mich App 278, 282; 807 NW2d 407 (2011). A court may only consider

substantively admissible evidence actually proffered by the parties when ruling on the motion. *Maiden v Rozwood*, 461 Mich 109, 121; 597 NW2d 817 (1999); see also MCR 2.116(G)(6).

## B. LEGAL MALPRACTICE PRINCIPLES

The elements of a legal malpractice action in Michigan are: (1) the existence of an attorney-client relationship, (2) negligence in the legal representation of the client, (3) an injury that was proximately caused by the negligence, and (4) the fact and extent of the injury alleged. *Simko v Blake*, 448 Mich 648, 655; 532 NW2d 842 (1995); *Charles Reinhart Co v Winiemko*, 444 Mich 579, 585-586; 513 NW2d 773 (1994). A plaintiff has the burden of proving all of these elements to prevail. *Charles Reinhart*, 444 Mich at 586. When an attorney is retained by a client in a cause, the attorney is obligated and has an implied duty to use and exercise reasonable skill, care, discretion, and judgment with respect to representing the client and management of the cause. *Simko*, 448 Mich at 655-656. All attorneys have a duty to act as would an attorney of ordinary skill, judgment, and learning under the same or similar circumstances. *Id*. at 656. "An attorney has the duty to fashion such a strategy so that it is consistent with prevailing Michigan law." *Id*. An attorney has no duty to guarantee or insure the most favorable outcome possible, and counsel is "never bound to exercise extraordinary diligence, or [to] act beyond the knowledge, skill, and ability ordinarily possessed by members of the legal profession." *Id*.

"In legal malpractice actions, a duty exists, as a matter of law, if there is an attorney-client relationship." *Id*. at 655. An attorney-client relationship "may be implied from conduct of the parties . . . [and] is sufficiently established when it is shown that the advice and assistance of the attorney are sought and received in matters pertinent to his profession." *Macomb Co Taxpayers Ass'n v L'Anse Creuse Pub Sch*, 455 Mich 1, 11; 564 NW2d 457 (1997) (quotation marks and citation omitted). "The rendering of legal advice and legal services by the attorney and the client's reliance on that advice or those services is the benchmark of an attorney-client relationship." *Id*. The existence of an attorney-client relationship is not dependent on a formal contract or the payment of a fee. *Id*. "Whether in any case an attorney is professionally employed depends on the relations and mutual understanding of the parties, on what was said and done, and all the facts and circumstances of the particular undertaking." *Case v Ranney*, 174 Mich 673, 682; 140 NW 943 (1913).

## C. AGENCY LAW AND SUBAGENTS

The attorney-client relationship entails or implicates the law of agency. *Law Offices of Jeffrey Sherbow, PC v Fieger & Fieger, PC*, 507 Mich 272, 299; 968 NW2d 367 (2021).[5] "In a legal sense, an attorney at law often acts as an agent or representative." *Id*. at 299-300 (quotation marks and citation omitted). The attorney's scope of authority in that role is defined by the express

---

[5] We also note our Supreme Court's discussion in *Katz v Kowalsky*, 296 Mich 164, 174; 295 NW 600 (1941), in which the Court applied the principles of agency to the attorney-client relationship. See also *Fletcher v Bd of Ed of Sch Dist Fractional No. 5*, 323 Mich 343, 348; 35 NW2d 177 (1948) ("The relation of attorney and client is one of agency.") (quotation marks and citation omitted).

or implied agreement of the attorney and client. *Id.* at 300. "The parties thus can determine the precise scope and nature of the relationship." *Id.* Recently, this Court held "that where an attorney and a client expressly limit terms of the attorney's representation, the duty imposed on the attorney for purposes of a legal malpractice action is limited to the agreed-upon scope of representation." *Patel v FisherBroyles, LLP*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 357092); slip op at 6.

Over 130 years ago, in *Hoag v Graves*, 81 Mich 628, 633; 46 NW 109 (1890), our Supreme Court addressed the subject of subagents, observing:

> The legal principle involved is well expressed by Mr. Mechem in his work on Agency, at section 197, as follows: "If an agent employs a subagent for his principal, and by his authority, expressed or implied, then the subagent is the agent of the principal, and is directly responsible to the principal for his conduct, and if damage results from the conduct of such subagents, the agent only is responsible in case he has not exercised due care in the selection of the subagent. But if the agent, having undertaken to transact the business of his principal, employs a subagent on his own account to assist him in what he has undertaken to do, he does so at his own risk, and there is no privity between such subagent and the principal. The subagent is therefore the agent of the agent only, and is responsible to him for his conduct, while the agent is responsible to the principal for the manner in which the business has been done, whether by himself or his servant or his agent."

## D. DISCUSSION AND RESOLUTION

Applying the principles from *Hoag*, we note that Bryen, as attorney or agent for principal Auburn, employed a subagent, Weintraub, for the benefit of Auburn and by express authority of Auburn under the language of the retainer agreement executed by Bryen and Auburn. By signing the agreement, Auburn assented to or approved of Bryen's delegating work to Weintraub. In other words, this case presents the situation posed in the first of the two scenarios illustrated by *Hoag* in the passage quoted in the preceding paragraph. *Hoag*, 81 Mich at 633. Therefore, Weintraub was an agent of Auburn and directly responsible to Auburn for its conduct. *Id.*[6] The question then becomes whether there is a genuine issue of material fact regarding whether Weintraub's conduct, *id.*, or the scope of its representation, see *Patel*, ___ Mich App at ___; slip op at 6, encompassed the acts or failures to act alleged by Auburn in its malpractice suit.

First, deposition testimony by Bryen and Arnold Weintraub definitively established that Weintraub did no work whatsoever in the underlying litigation with respect to the appeal to the United States Court of Appeals for the Sixth Circuit. There was no evidence to the contrary; therefore, to the extent that the malpractice action alleged fault connected to the federal appeal,

---

[6] Of course, if the latter or second scenario stated in *Hoag*, 81 Mich at 633, had applied, which it does not, Weintraub would not have owed any duty nor have had any responsibility to Auburn.

there is no genuine issue of material fact that Weintraub's conduct or scope of representation did not entail work on the appeal and could not form the basis of a legal malpractice action.

With respect to Weintraub's involvement with the case in the federal district court, Bryen testified as follows:

> *Q.* So it's my understanding that you asked Mr. Weintraub to do a very limited number of things in the Auburn Sales versus Cypros Trading . . . case, is that right?
>
> *A.* That would be correct.
>
> *Q.* And one of those things was you asked Mr. Weintraub to review the draft of the complaint that was prepared by you and Mr. Snider after the claims were framed and discussed with Mr. Rigby?
>
> *A.* Correct.
>
> *Q.* And you asked him specifically to review the complaint to make sure that it complied with local federal jurisdictional rules?
>
> *A.* The local rules, correct, and if there was anything that should be applied with . . . regard to the Lanham Act.[7]
>
> *Q.* Okay. And you asked him to look at it for jurisdictional and if he had any questions on the facts as pled?
>
> *A.* Correct.
>
> *Q.* All right. . . . Mr. Weintraub had no involvement in framing the claims that were already included in the draft complaint?
>
> *A.* To my knowledge, no.
>
> *Q.* All right. And you did not ask him to evaluate whether or not other claims should be included in the complaint?
>
> *A.* To my knowledge, no.
>
> *Q.* All right. And you asked Mr. Weintraub to assist in working on the summary judgment of the motion to dismiss the Cypros . . . counterclaims, is that right?

---

[7] The Lanham Act, 15 USC 1051 *et seq.*, concerns the subject of trademarks. Auburn makes no argument relative to the Lanham Act.

*A.* No, I did not.

*Q.* Okay. Do you know if . . . Mr. Weintraub provided any assistance in getting that counterclaim summarily dismissed?

*A.* He did not to my knowledge.

Bryen testified that Mr. Weintraub was going to attend a deposition in New York connected to the case, but Dorne Rigby "nixed" the plan. When asked whether there was anything else that Weintraub did in relation to the underlying lawsuit, Bryen stated only that Arnold Weintraub "attended a settlement luncheon." The record also contains an e-mail from Bryen to defendant Stuart Snider in which Bryen noted that Arnold Weintraub would check the complaint "to make sure we comply with the local rules for jurisdiction etc."

Arnold Weintraub testified in his deposition that his review of the complaint was specifically for purposes of "wordsmithing"[8] and checking the language with respect to jurisdiction and venue. Mr. Weintraub elaborated that Bryen had asked him to review the complaint in regard to wordsmithing, jurisdiction, and venue. He also testified that he "contributed somewhat" to the motion for summary disposition that resulted in the dismissal of Cypros's counterclaim. Attorney Weintraub believed that he merely reviewed that motion for summary disposition; he did not recall drafting the motion. He assumed that, but could not directly recall whether, he reviewed documentary evidence and deposition transcripts in connection with the summary disposition motion relative to Cypros's counterclaim. Mr. Weintraub testified that he filed an appearance in the underlying lawsuit because he was supposed to accompany Bryen to a deposition in New York and his appearance was necessary to do so. Ultimately, he did not attend the deposition after Rigby declined to assume the costs associated with attorney Weintraub's attendance. Mr. Weintraub acknowledged that he never withdrew the appearance.

Dorne Rigby testified in his deposition that Bryen introduced him to Mr. Weintraub. Rigby stated that when he signed the retainer agreement, he was told that Weintraub would be involved in the case, although Bryen would be the "lead guy." Rigby claimed that Bryen communicated to him that Bryen wanted Mr. Weintraub to be involved because of his "expertise in copyright and patent." Rigby testified that he exchanged several e-mails with attorney Weintraub during the process of drafting the complaint against Cypros. The e-mailed drafts revealed numerous notes and comments made by Mr. Weintraub on the drafts. Rigby could not recall whether he ever had conversations with attorney Weintraub regarding what claims should or should not be included in the complaint. Rigby testified that Mr. Weintraub was involved a "little bit" in early settlement discussions in the underlying action, which did not go anywhere. When asked what attorney Weintraub did that caused the claims filed by Auburn against Cypros to fail, Rigby responded, "Arnie [Weintraub] helped draft the complaint. He was a part of it." Rigby further asserted, "And as far as I'm concerned, the Complaint was botched and he was a part of the mistake." Rigby was

---

[8] Wordsmithing is defined as "[t]he making of changes to a text to improve clarity and style, as opposed to content." Wiktionary <en.wiktionary.org/wiki/wordsmithing> (accessed February 21, 2023).

insistent that Mr. Weintraub was liable and responsible, at least in part, because he was part of the team that worked on drafting the complaint. Rigby testified:

> I think it was more than just a jurisdictional thing. I think. I don't know. There's so many . . . drafts going back and forth. I believe when I scanned it[,] it was over 60 megabyte[s] and close to a couple hundred pages.

Rigby acknowledged that he never paid any monies or other consideration to Weintraub in relation to the litigation against Cypros.

Auburn supplied the trial court with many pages of drafts of the complaint against Cypros, which included comments by Mr. Weintraub in the margins and responses to the comments with, at times, corrections made to the complaint based on Weintraub's suggestions. Several of the comments were in the form of questions seeking clarification regarding the language and facts alluded to in particular allegations. When the drafts reached the specific counts, attorney Weintraub did include some comments that could reasonably be construed as substantive in nature. With respect to the claim of intentional interference with a business relationship, Mr. Weintraub suggested that instead of indicating that Cypros "supplied" counterfeit parts, the complaint should read that Cypros "commingled" counterfeit parts. With regard to the claim of intentional interference with a prospective economic advantage, Mr. Weintraub asked whether there was any supporting statutory or common law that could be cited. As to the breach of contract claim, attorney Weintraub suggested that language be added indicating that it was reasonably foreseeable to Cypros that its conduct would be imputed to Auburn. With respect to a fraud claim that eventually was not included in the complaint, Mr. Weintraub questioned when and what led to a discussion wherein misrepresentations were allegedly made by Cypros. In regard to the negligence claim, Mr. Weintraub wrote, "You want actual damages, based upon lost sales, a finding of wilfullness; Ask for $5,000,000 plus attorney fees."

If Weintraub's conduct or scope of representation was limited to true wordsmithing, addressing jurisdictional and venue issues in the context of the complaint, participating in settlement talks, or working on the summary disposition motion relative to Cypros's counterclaim, Auburn's legal malpractice action would rightfully be summarily dismissed under MCR 2.116(C)(10) because the allegations of malpractice did not concern or arise out of those matters. Rigby's deposition testimony, in and of itself, does not alter this conclusion. Although Rigby opined that attorney Weintraub should be held accountable for his involvement in drafting and preparing the complaint against Cypros because he was part of the team working on the complaint, Rigby could not point to any specific instances of malfeasance or nonfeasance by Mr. Weintraub that formed the basis of the malpractice action. Rigby was also unable to identify any particular role or job that was assigned to or undertaken by Mr. Weintraub in connection with preparation of the complaint. Additionally, we do not view Weintraub's action in filing an appearance in the Auburn-Cypros litigation as expanding the scope of its representation, especially with respect to the already-drafted complaint. And there was no evidence or argument countering Mr. Weintraub's explanation that the appearance was filed merely to allow participation in a deposition that never came to fruition. Moreover, a motion for reconsideration had been denied by the federal district court after it summarily dismissed Auburn's lawsuit against Cypros, and to the extent that the malpractice action claims negligence in preparing or drafting the reconsideration motion, there was no evidence of Weintraub's involvement with the motion.

The comments by attorney Weintraub on the various drafts of the complaint, however, tell a different story. When viewed in a light most favorable to Auburn, Mr. Weintraub's comments could be construed to go way beyond wordsmithing, jurisdiction, and venue. As referenced above, some of the comments regarding the causes of action were substantive in nature. And it is not particularly relevant for our purposes whether or not the comments specifically serve as the basis for any of the malpractice allegations. Rather, the substantive nature of the comments reasonably suggest that attorney Weintraub's role in drafting the complaint—as well as Bryen's delegation of tasks to Weintraub—were much broader than that claimed by Mr. Weintraub and Bryen and extended beyond matters of wordsmithing, jurisdiction, and venue. If Weintraub's role was greater than that claimed, mere commentary silence in review of the causes of action could lead a juror to conclude that malpractice was committed because a pertinent remark was not made when it should have been made. Accordingly, we hold that there exists a genuine issue of material fact regarding whether the allegations of legal malpractice could be attributable to Weintraub's conduct and fell within the scope of Weintraub's representation and thereby impacting whether Weintraub owed a pertinent duty of care to Auburn.

On the issue of causation, Auburn contends that the trial court erred by determining as a matter of law that assuming that Weintraub could be liable for malpractice, the failure to allege an unjust enrichment claim in the underlying suit against Cypros did not cause any damages because Auburn did not have a valid unjust enrichment claim against Cypros. The trial court reasoned that Auburn did not confer any benefit on Cypros; rather, Auburn simply "sold parts to the tortfeasors who then supplied those parts to the end customer" after Cypros had comingled the authentic parts with counterfeit parts obtained elsewhere. We agree with the trial court.[9]

The elements of a claim for unjust enrichment are (1) receipt of a benefit by the defendant from the plaintiff, and (2) an inequity resulting to the plaintiff from the defendant's retention of the benefit. *Dumas v Auto Club Ins Ass'n*, 437 Mich 521, 546; 473 NW2d 652 (1991). In the malpractice complaint, Auburn alleged that Cypros had received benefits as a result of its wrongful conduct and

> [t]hat those benefits came at the expense of [Auburn] in that Cypros sold counterfeit goods it obtained from others rather than selling legitimate goods from plaintiff Auburn, [and] it thus obtained a benefit at Auburn's expense and a loss for [Auburn].

This was not a situation in which Auburn supplied Cypros with Chrysler parts absent payment by Cypros. Auburn's expressed theory simply does not entail receipt of a benefit by Cypros *from Auburn*. Rather, Auburn's theory was that Cypros benefitted from being paid for counterfeit parts, but this was not a benefit conferred by Auburn; it was a benefit conferred by Cypros's customers in the Middle East. The fact that Auburn may have had more sales to Cypros had Cypros sold only genuine Chrysler parts to its customers does not translate to a claim of unjust enrichment. If any person or entity had a valid claim for unjust enrichment it would be Cypros's

---

[9] We of course are operating on the assumption that a jury would reach this issue after finding that Weintraub owed a duty to Auburn in regard to drafting the complaint.

customers.  In short, we conclude as a matter of law that Auburn does not have a valid claim for legal malpractice against Weintraub premised on a failure to allege a cause of action of unjust enrichment against Cypros.  The trial court made no error in this respect.

We affirm with regard to the unjust enrichment issue but otherwise reverse and remand for further proceedings consistent with this opinion.  We do not retain jurisdiction.  We decline to tax costs under MCR 7.219.


/s/ Mark J. Cavanagh
/s/ Jane E. Markey
/s/ Stephen L. Borrello